OFFICE OF DISCIPLINARY COUNSEL *v.* HARDESTY.

[Cite as *Disciplinary Counsel v. Hardesty* (1997), 80 Ohio St.3d 444.]

*Attorneys at law — Misconduct — Two-year suspension with second year of sanction stayed — Abdicating duty of counseling clients.*

(No. 97-1301 — Submitted August 26, 1997 — Decided December 31, 1997.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-23.

In 1993, the Hancock County Court of Common Pleas imposed a sanction in the amount of $500 against respondent, Kenneth W. Hardesty of Lima, Ohio, Attorney Registration No. 0023914, for failure to respond to a court order for the production of documents. Respondent's client, Virginia S. Creighton, filed a grievance against him in 1994. Respondent, until subpoenaed, failed to respond to numerous written and telephone inquiries of relator, Office of Disciplinary Counsel, in its attempt to investigate the grievance.

In 1992, respondent, while representing Diana McLoughlin in divorce proceedings, breached an agreement with opposing counsel that neither was to attend an appraisal of personal property. Respondent attended the appraisal and demanded and obtained from the opposing party, John McLoughlin, various discovery materials which McLoughlin produced without the opportunity to receive the advice of counsel

Also in 1992, respondent received a retainer of $420 from Carl Hicks to file a Chapter 13 bankruptcy. Although respondent filed the bankruptcy petition, the case was dismissed for want of prosecution because respondent failed to file the necessary schedules even after the court issued a show cause order.

Again in 1992, Lester Ricks retained respondent to represent him in a pending unemployment compensation claim. As a result of failing to serve the

necessary state agency when appealing the denial of Ricks's claim, respondent obtained a judgment in favor of Ricks. After the state agency was successful in having the case reopened, respondent failed to take any further action on behalf of Ricks and the case was dismissed.

In 1994, respondent filed a Chapter 7 bankruptcy for Robert and Susan Mooney. The Mooneys' schedules of debts prepared by respondent failed to reveal that they had made preferential payments to a relative. When the Chapter 7 bankruptcy trustee threatened to recover the preferential payment from the relative, the Mooneys agreed to settle with the trustee by paying him approximately $211 a month. After a motion of the United States Trustee to dismiss the Mooneys' Chapter 7 case for substantial abuse under Section 707(b), Title 11, U.S.Code, the bankruptcy judge found that the Mooneys' failure to reveal the payments to the relative weighed in favor of dismissal, and that their "want of need," as evidenced in part by their ability to pay the relative, warranted dismissal of their Chapter 7 bankruptcy. The bankruptcy judge ordered that the Mooneys be given ten days to convert their case to a Chapter 13 bankruptcy or the case would be dismissed.

In 1989, respondent represented Mozelle P. Olson in a Chapter 7 bankruptcy. During the case the bankruptcy trustee sought to sell real estate owned by the debtor and located in Wisconsin. Respondent's objection to the sale on behalf of Olson was overruled, and his subsequent appeal to the United States District Court was dismissed as untimely. Respondent then moved to dismiss the Chapter 7 case. The bankruptcy judge found that the motion was an attempt to relitigate previously decided issues regarding the sale and ordered sanctions against respondent.

On July 1, 1996, relator, Office of Disciplinary Counsel, filed a second amended complaint charging that respondent's conduct in these matters violated

several Disciplinary Rules. After respondent's answer, the parties stipulated to the facts alleged in the complaint, and the matter was submitted to a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

Based upon the stipulation, the panel concluded that respondent violated the following Disciplinary Rules: with respect to the Creighton matter, DR 1-102(A)(5) (conduct prejudicial to the administration of justice), 6-101(A)(3) (neglect of a legal entrusted matter), and 1-102(A)(6) (conduct that adversely reflects upon the fitness to practice law); with respect to the McLoughlin matter, 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(4)[*sic*, (6)] (conduct that adversely reflects upon the fitness to practice law), and 7-104(A)(1) (communication with an adverse party); with respect to the Hicks matter, 1-102(A)(5), 6-101(A)(3), and 1-102(A)(6); with respect to the Ricks matter, 6-101(A)(2) (handling a legal matter without adequate preparation), 6-101(A)(3), and 7-101(A)(1) (failing to seek the lawful objectives of a client); with respect to the Mooney matter, 1-102(A)(4) and (5) and 7-102(A)(2) (advancing a claim unwarranted under existing law), (3) (concealing that which by law an attorney is required to reveal), (4) (using false evidence or perjured testimony), (6) (participating in the creation of false evidence), and (7) (assisting a client in illegal or fraudulent conduct), with the caveat that the violations appeared to be more the result of his clients' actions than respondent's actions; and with respect to the Olson matter, 6-101(A)(3), 7-101(A)(1), 7-102(A)(2), 1-102(A)(5), and 1-102(A)(6). The panel considered in mitigation that during the period of these events respondent took on more work than he could handle and that he was inclined to accede to the wishes of his clients "irrespective of statutory or other procedural niceties." The panel also considered that respondent's counsel agreed to monitor the respondent's future activities. The panel recommended that

3

respondent be suspended for a period of two years with one year of the suspension stayed on condition that respondent undergo monitoring during the second year of suspension.

The board adopted the findings, conclusions, and recommendation of the panel.

_____

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Harald F. Craig III*, Assistant Disciplinary Counsel, for relator.

*Michael J. Bender, Jr.*, for respondent.

_____

***Per Curiam***. We adopt the findings of the board. Having reviewed the entire record, we find, as did the board, that several of respondent's violations were the result of ready deference to his clients' bidding. Taking the facts most favorable to respondent, Creighton was reluctant to respond to discovery, Hicks refused to provide the information necessary to complete bankruptcy schedules, and Olson both provided opinions from other counsel that certain legal actions were appropriate and demanded that respondent take them. Respondent yielded to these clients' wishes when he should have counseled them with respect to their duties under the law. The board concluded this to be a mitigating factor. We do not reach the same conclusion.

All too often we have observed members of the profession, not only solo practitioners, but also salaried corporate counsel, members of small and large firms, and government attorneys, operating as "hired guns," acting solely at the direction of their employers or clients and neglecting their duty to counsel their clients. Neither the position of an attorney as an employee, nor the pressure to retain a

4

client in a competitive legal environment, can justify an attorney's abdication of the duty of counseling.

One of our ethical considerations, EC-7-8, provides that "[a] lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so. Advice of a lawyer to his client need not be confined to purely legal considerations. A lawyer should advise his client of the possible effect of each legal alternative. A lawyer should bring to bear upon this decision-making process the fullness of his experience as well as his objective viewpoint. In assisting his client to reach a proper decision, it is often desirable for a lawyer to point out those factors which may lead to a decision that is morally just as well as legally permissible." As we pointed out in *Akron Bar Assn. v. Miller* (1997), 80 Ohio St.3d 6, 9, 684 N.E.2d 288, 291, " '[T]he lawyer's job is not merely to supply whatever means are needed to achieve the client's goals but also to deliberate with the client and on his behalf about these goals.' " We expect this consideration to be taken seriously by every lawyer in this state.

In these matters respondent acted as a "hired gun"; he failed in his duty to counsel. We do not consider that a mitigating circumstance.

With respect to the Mooney matter, we disagree with the conclusion of the board that respondent violated DR 1-102(A)(4) and (5), and 7-102(A)(2) and (7) to the extent that those violations are based upon the bankruptcy court's dismissal of the Mooneys' Chapter 7 case for substantial abuse under Section 707(b), Title 11, U.S.Code. A Chapter 7 bankruptcy case may be dismissed for substantial abuse, as was the Mooneys' case, because the court finds that the debtors are able to pay some of their creditors under Chapter 13. The bankruptcy judge noted that it was not surprising that the Mooneys and the United States Trustee differed on whether

5

the debtors could pay their creditors in a Chapter 13 plan. The bankruptcy judge then gave the Mooneys the option of converting the case to a Chapter 13 bankruptcy as an alternative to dismissal.

A lawyer is obliged to represent his client zealously within the framework of the law. Filing a Chapter 7 action which is later dismissed for "substantial abuse" because a bankruptcy court finds that the debtor has the ability to make payments under Chapter 13 does not necessarily constitute a disciplinary violation by the attorney. In this particular instance, we conclude that no violation occurred.

However, in all other respects we adopt the conclusions of the board.

Respondent is hereby suspended from the practice of law for two years, with the second year of the suspension stayed. For that second year, respondent will be on probation and will be monitored by an attorney chosen by and reporting to relator. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.