OPINION
Plaintiff-appellant, Leonard Grubb ("appellant"), appeals the May 24, 2000 judgment entry by the Lake County Court of Common Pleas, granting defendants' motion for summary judgment in favor of defendant-appellee, Patrice Feher Denman ("Denman"). In doing so, the trial court denied appellant's cross-motion for summary judgment, as it related to Denman. As to the parties' summary judgment motions, pertaining to defendant, Rosemarie Karras ("Karras"), the trial court did not address those arguments in the May 24, 2000 judgment entry; rather, the trial court scheduled a separate hearing. The instant appeal only addresses the issues related to Denman.
Shortly after Karras stopped payment on a $21,400 check issued to appellant, concerning a business deal, Karras sought the legal advice of Denman, an attorney licensed to practice law in Ohio and a part-time magistrate with the Domestic Relations Division of the Lake County Court of Common Pleas.
Although the surrounding circumstances that lead Karras to seek the legal advice of Denman are not before this court, it is necessary to briefly mention those events. On November 1, 1997, appellant and Karras entered into a purchase agreement in which appellant agreed to purchase Karras' home for $77,000. Karras signed a "balloon note," promising to pay Curtis Gadd $37,291.77. This money was advanced to Karras as a down payment towards appellant's purchase of her home. The note was secured by a mortgage deed on Karras' home. Later, in an agreement back dated January 5, 1998, Karras and Maureen Whitecomb-Grubb ("Whitecomb-Grubb"), appellant's spouse, also entered into a purchase agreement for Karras' home; however, in this instance, the purchase price was $107,000. Curtis Gadd assigned the balloon note and mortgage to appellant. Subsequently, the Karras/Whitecomb-Grubb purchase agreement closed, and title transferred on August 31, 1998. Although the reasoning for the following event is in dispute and not before this court, Karras issued appellant a check, dated August 26, 1998, for $21,400, but later stopped payment on it. Appellant alleged the $21,400 was a partial payment for his equity in Karras' home, which was established by the difference in the selling prices.
Subsequently, Karras sought the legal advice of Denman, who placed the disputed funds in her IOLTA account (Interest on Lawyer's Trust Account). Denman further stated that she placed the funds in her IOLTA account, believing that there was a legitimate dispute. However, Denman subsequently determined that in her opinion, appellant fraudulently induced Karras to issue the check because Karras did not know the note was assigned to him, nor did she know the note was going to be satisfied out of the proceeds. In a correspondence dated October 5, 1998, Denman informed appellant's counsel that, upon reviewing the documents submitted by her client, there was no lien owed to appellant because the title company satisfied the note and mortgage out of the sale proceeds. Therefore, she was going to release the funds to her client.
That same day, October 5, 1998, by facsimile, appellant's counsel asserted to Denman that, in consideration of postponing litigation against Karras, Denman had allegedly agreed to hold the funds in her IOLTA account; therefore, she owed a fiduciary duty to both sides. Appellant's counsel demanded the $21,400 or else a suit would be filed.
On October 7, 1998, appellant filed a complaint, naming Karras and Denman as defendants, seeking collection of the $21,400.[1] As to Denman, appellant alleged that she engaged in the illegal practice of law because she was a part-time magistrate in Lake County and that, as trustee of the funds, she breached a fiduciary duty owed to him when she released the funds.[2]
On January 28, 2000, defendants filed a joint motion for summary judgment. As to Denman, defendants contended that, pursuant to the terms of the closing transaction, appellant was already paid the amount due to him under the mortgage and note. Defendants further averred that Denman only owed a fiduciary duty to her client — Karras. Attached to their motion, defendants included, among other things, the affidavits of Karras and Denman, the two purchase agreements, the balloon note and mortgage deed, the assignment of the mortgage and note, and the correspondences between Denman and appellant's counsel.
Thereafter, on February 10, 2000, appellant filed a brief in opposition to defendants' motion for summary judgment. As to Denman, appellant argued that, as trustee of the funds, pursuant to an alleged oral agreement, she breached a fiduciary duty owed to him. Appellant further contended that Denman violated numerous ethical rules because, as a magistrate, she was prohibited from practicing law. Attached to appellant's brief were, among other things, the two purchase agreements and the correspondences between Denman and his counsel.
Subsequently, on February 24, 2000, appellant filed a cross-motion for summary judgment, asserting similar arguments as in his brief in opposition. Again, appellant contended that Denman breached a fiduciary duty and engaged in the illegal practice of law. Appellant further opined that Denman was estopped by the doctrine of unclean hands, claiming that she engaged in theft and willingly participated in a scheme to defraud him. Appellant's motion included, among other things, his affidavit, the purchase agreements, and the correspondences between Denman and his counsel.
In a judgment entry filed May 24, 2000, the trial court granted defendants' motion for summary judgment, only as it related to Denman, stating Denman did not owe appellant a fiduciary duty and did not engage in the illegal practice of law. The trial court denied appellant's motion for summary judgment, as it pertained to Denman. The trial court also stated that there was no just cause for delay. On June 23, 2000, appellant filed a timely appeal, asserting the following assignments of error:
 "[1] The trial court erred to the prejudice of the plaintiff-appellant in granting appellee's motion for summary judgment.
 "[2] The trial court erred to the prejudice of the plaintiff by finding that appellee Denman's practice of law while a part time magistrate in the Lake County Court of Common Pleas was not in violation of R.C. 4705.01
and/or the Code of Judicial Conduct."
In order to address appellant's assignments of error in a logical manner, we begin with appellant's second assignment or error. In appellant's second assignment of error, appellant contends that Denman, a part-time magistrate in the Lake County Court of Common Pleas, Domestic Relations Division, illegally engaged in the private practice of law. Specifically, appellant avers that Denman violated R.C. 4705.01, referenced in R.C. 1901.11(B)(1)(a), the Code of Judicial Conduct, and other codes of conduct. Appellant also claims Denman's conduct warrants disciplinary review.
The foremost purpose for the Code of Judicial Conduct and the Code of Professional Responsibility is to ensure a legal system of the highest caliber and to instill and maintain public confidence in that legal system. In re Complaint against Harper (1996), 77 Ohio St.3d 211, 219. Hence, Canon 4(F) of the Code of Judicial Conduct provides that a judge may not engage in the practice of law during his term in office. See, also, R.C. 4705.01.[3] A "judge" is defined as anyone who is an officer of a judicial system who performs judicial functions, i.e., a magistrate. Compliance Section (A) of the Code of Judicial Conduct.
However, Compliance Section (A) provides for exceptions to the general rule in Canon 4(F). Specifically, a part-time judge (magistrate), who serves on a continuing or periodic basis and who is permitted by law to devote time to another profession or occupation, is not required to comply with Canon 4(F), meaning a part-time judge may engage in the practice of law, with certain limitations. Compliance Section (B)(1). Even so, a part-time judge is prohibited from practicing law in the "court on which he or she serves," in any court subject to the appellate jurisdiction of the court on which he or she serves, or in any proceeding in which he or she has served as a judge. Compliance Section (B)(2). A part-time judge is also statutorily prohibited from practicing law in matters pending or originating in the court in which he or she serves. R.C. 1901.11(A)(2).
Due to the numerous combinations of common pleas, domestic relations, juvenile, and probate courts throughout the eighty-eight counties in Ohio, the Board of Commissioners on Grievances and Discipline for the Supreme Court of Ohio released an advisory opinion, construing the phrase "court on which he or she serves" more precisely. See Bd. of Commrs. on Grievances and Discipline (April 3, 1998), Advisory Op. No. 98-3, at 3. The Board of Commissioners has consistently interpreted the phrase "court on which he or she serves" as allowing a part-time magistrate in one division of the court of common pleas to practice law in another division of that court of common pleas, but not before the appointing judge. However, the Board of Commissioners released Advisory Opinion 98-3 to further clarify the general rule because some Ohio counties have courts that are separate divisions and other counties have courts that are part of another division, i.e. when a juvenile court is part of a probate court. The Board of Commissioners also wanted to provide clarification when the appointing judge for a part-time judge (magistrate) is also the presiding judge for more than one division of a common pleas court. Thus, to eliminate confusion, the Board of Commissioners advised that the phrase "court on which he or she serves" should be construed to mean that a part-time magistrate of a common pleas court may not practice law in the court on which he or she serves or in the court on which the appointing judge serves. Id. at 4.[4]
In addressing a similar situation as the instant case, where appellee's attorney was a part-time magistrate in the Domestic Relations Division of the Lorain County Court of Common Pleas, the Ninth Appellate District determined that a change of venue was not necessary because the case was filed in the General Division of the Lorain County Court of Common Pleas and appellee's attorney did not owe his appointment to the presiding trial judge. Backyard Grill v. Anagnostopoulos (June 23, 1999), Lorain App. No. 98CA007095, unreported.
Lastly, appellant cites to Cincinnati Bar Assn. v. Worth (1998),82 Ohio St.3d 305, where the Ohio Supreme Court determined that a probate court magistrate violated the disciplinary rules by performing legal services for others after his appointment to the probate court. However, in Worth, unlike the case sub judice, the legal services performed by the probate court magistrate directly related to issues that could have come before the probate court on which the magistrate served, and there is no indication that the magistrate's appointment was part-time. Specifically, after his appointment to the probate court, the magistrate drafted a power of attorney and revised several wills for friends and relatives. Id. at 306.
In the case presented, Denman, a part-time magistrate in the Domestic Relations Division of the Lake County Court of Common Pleas, was not required to comply with Canon 4(F), which prohibits full-time judges from practicing law during their terms in office. Moreover, as a part-time magistrate for the domestic relations division, it was highly unlikely that Denman would have been required to practice law in this case in the "court on which she served" because this case involved a real estate transaction. In particular, this case was filed in the general division of the common pleas court as a civil case involving a contract dispute. Additionally, appellant does not raise the issue that the presiding judge of the General Division of the Lake County Court of Common Pleas was also the appointing judge for Denman. Accordingly, appellant's second assignment of error is without merit.
Next, in appellant's first assignment of error, appellant opines that Denman breached a fiduciary duty owed to him when she released the funds. Appellant alleges that, pursuant to an oral contract, Denman was designated trustee of the funds and was required to hold the funds until the matter was settled.
The ultimate issue for our review is the trial court's grant of summary judgment in favor of Denman. Thus, before addressing the merits of appellant's first assignment of error, it is necessary to set forth the law and proper standard of review for summary judgment.
On appeal, a reviewing court conducts a de novo review of a trial court's summary judgment entry. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. A de novo review requires an independent review of the trial court's decision without deference to it. Brown v. SciotoBd. of Commrs. (1993), 87 Ohio App.3d 704, 711. Summary judgment is a procedural device designed to avoid a formal trial when there is nothing left to litigate. Norris v. Ohio Std. Oil Co. (1982), 70 Ohio St.2d 1.
Summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence, viewing the evidence most strongly in favor of the nonmoving party, that reasonable minds can come to but one conclusion, which is adverse to the non-moving party. Civ.R. 56(C); Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-370.
Once a moving party satisfies their burden of supporting their motion for summary judgment with sufficient and acceptable evidence, pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that a non-moving party may not rest upon allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine issue" exists to be litigated for trial. Civ.R. 56(E); State ex rel. Zimmerman v. Tompkins
(1996), 75 Ohio St.3d 447, 449. A "genuine issue" exists when a reasonable jury could return a verdict for the non-moving party based upon the evidence. Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242,248. If the non-moving party does not satisfy this reciprocal burden or fails to produce any evidence supporting an essential element of his claim, then summary judgment, if appropriate, will be granted against the non-moving party. Civ.R. 56(E). The principal purpose for Civ.R. 56(E) is to allow the court to analyze the evidence in order to determine whether there exists an actual need for a formal trial. Ormet PrimaryAluminum Corp. v. Employers Ins. of Wausau (2000), 88 Ohio St.3d 292,300.
In the case sub judice, this court is required to independently determine whether the trial court properly granted defendants' motion for summary judgment as it pertains to Denman. However, before making this determination, we must first address the underlying issue concerning the alleged breach of fiduciary duty by Denman.
"A `fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." Ed Schory Sons, Inc. v. Francis (1996),75 Ohio St.3d 433, (citing In re Termination of Employment of Pratt
[1974], 40 Ohio St.2d 107, 115). Additionally, a fiduciary relationship may be created out of an informal relationship; however, both partiesmust understand that a special trust or confidence has been reposed. Leev. Cuyahoga Cty. Court of Common Pleas (1991), 76 Ohio App.3d 620, 623
(citing Umbaugh Pole Bldg. Co. v. Scott [1979], 58 Ohio St.2d 282) . The law protects against abuse of a fiduciary relationship; however, the existence of such a relationship must first be proved. In re Terminationof Employment of Pratt, supra, 40 Ohio St.2d at 115.
In the instant appeal, construing the evidence, pertaining to Denman, in a light most favorably to the non-moving party for each motion for summary judgment, there is no evidence, let alone some evidence, that an oral contractual trust was entered into between the parties, designating Denman the trustee of the disputed funds. Appellant's allegations that a fiduciary relationship was created between appellant and Denman is insufficient as a matter of law. In particular, the October 5, 1998 correspondences, between Denman and appellant's counsel, indicate that Denman agreed to place her client's funds in her IOLTA account; however, this alone is insufficient to create a fiduciary relationship between Denman and appellant because all attorneys, who receive funds belonging to their clients, must deposit such funds in their IOLTA account. See R.C. 4705.09(A)(1). Such accounts are necessary because an attorney is prohibited from commingling personal funds with client funds. See DR 9-102(A).
Moreover, the only apparent fiduciary relationships that were created in the instant case are the attorney-client relationships between Denman and Karras, notwithstanding their friendship of seventeen years, as appellant repeatedly points out, and appellant and his former attorney. An attorney is required to represent his client zealously within the confines of the law. Office of Disciplinary Counsel v. Hardesty (1997),80 Ohio St.3d 444, 447. Under the circumstances, we find that, as a matter of law, Denman did not owe appellant a fuduciary duty. Therefore, appellant's first assignment of error is without merit.
It is incumbent on us to make the following observation. DR7-105(A) provides that an attorney shall not present, participate in presenting, or threaten to present criminal charges solely to obtain leverage in a civil matter. In Denman's October 5, 1998 correspondence to appellant's former counsel, Denman stated:
 "As I told you on Friday, October 2, 1998, I only placed the disputed amount of $21,400.00 into my IOLTA account because your office threatened my client with criminal charges." (Emphasis added.)
Appellant, in both his brief and oral argument, admits that he "instructed his attorneys to pursue immediately all legal means of collection, including a complaint to the local prosecutor * * *." Although the Board of Commissioners on Grievances and Discipline for the Supreme Court of Ohio is the initial determinant of alleged disciplinary code violations, this court will not condone unethical behavior by counsel. Based on appellant's own admissions, appellant's former counsel's actions concerning the threat of criminal prosecution (albeit undertaken at appellant's insistence) may have crossed the line of impropriety. See,e.g., Cincinnati Bar Assn. v. Cohen (1999), 86 Ohio St.3d 100; StarkCounty Bar Assn. v. Russell (1986), 25 Ohio St.3d 124.
Finally, as to appellant's contention that Denman's conduct warrants disciplinary review because Denman allegedly violated various rules of the Ohio Code of Professional Responsibilities and the Code of Judicial Conduct, the instant appeal is not the proper venue for such complaints. As stated above, such complaints are filed with the Board of Commissioners on Grievances and Discipline for the Supreme Court of Ohio. In disciplinary cases, involving charges of ethical misconduct by an attorney or a judge, the Board makes findings and recommendations for appropriate sanctions to the Supreme Court of Ohio.
Accordingly, upon thoroughly considering the parties' motions for summary judgment, regarding Denman, and construing the evidence that was before the trial court in a light most favorable to the non-moving party for each motion, we conclude that, as to Denman, there does not remain a genuine issue of fact for a formal trial. Reasonable minds can come to but one conclusion, concerning Denman, and that conclusion is adverse to appellant. Pursuant to Civ.R. 56(C), defendants' motion for summary judgment was supported with sufficient evidence, as to Denman; therefore, pursuant to Civ.R. 56(E), appellant had the reciprocal burden of setting forth specific facts, regarding Denman, showing that a genuine issue existed for trial. As stated, appellant failed to support his contention with sufficient facts, demonstrating the existence of an oral contractual trust by which Denman agreed to act as trustee of the disputed funds.
For the foregoing reasons, Denman is entitled to summary judgment as a matter of law. The trial court properly granted the motion for summary judgment, in favor of Denman, and correctly denied appellant's motion for summary judgment, regarding Denman. The judgment of the trial court is hereby affirmed.
 __________________________ JUDGE DIANE V. GRENDELL
O'NEILL, P.J., concurs, NADER, J., concurs in judgment only.
[1] Appellant filed amended complaints on September 29, 1999 and December 30, 1999.
[2] On January 5, 1999, the trial court granted a motion by appellant's counsel to withdraw because appellant wanted to represent himself prose.
[3] Canon 4(F) of the Code of Judicial Conduct sets forth very limited exceptions where a judge may practice law during his term in office. Canon 4(F) provides that a judge may represent himself pro se, may give legal advice, and may draft documents for family members, as long as no compensation is received.
[4] In addressing the factual situation that the Board of Commissioners was presented with in Advisory Opinion 98-3, the Board found that it was not proper for a part-time juvenile magistrate to practice law in the probate court when the juvenile court is within the probate division and the appointing judge presides over both courts. Bd. of Commrs. on Grievances and Discipline (April 3, 1998), Advisory Op. No. 98-3.