OPINION
{¶ 1} Plaintiffs-appellants, Michael and Marie Hahn, appeal from separate decisions granting summary judgment in favor of defendants-appellees, Laura Peterman ("Peterman"), Douglas R. Jennings ("Jennings"), and Phillip M. Collins Associates, in this attorney malpractice action. For the reasons stated below, we affirm.
 {¶ 2} The underlying facts of this matter go back to 1991, and have been partially outlined in this court's previous decisions in Hahn v. Doe d/b/a 84 Lumber Home Ctr. (Mar. 23, 1995), Franklin App. No. 94APE07-1024; and Hahn v. Satullo,156 Ohio App.3d 412, 2004-Ohio-1507. Briefly, the Hahns were acting as their own general contractor in building a home when they purchased Gold Bond brand drywall from 84 Lumber only to have it substituted with Domtar brand at the time of delivery. The error was not discovered until the drywall had been installed, at which time the Hahns noticed that the quality of the product did not meet their expectations. Various attempts were made to remedy the situation, but the Hahns remained dissatisfied and initiated litigation against 84 Lumber based upon alleged violations of the Consumer Sales Practices Act and breach of warranty. They were successful in obtaining a judgment sufficient to cover the purchase and installation of new drywall; however, the Hahns chose not to have the drywall removed and replaced with the brand they had originally selected. Instead, they attempted to address the defects in the Domtar drywall by "skim coating" it, but were dissatisfied with the result. In addition, they complained that, beginning in August 1994 during the interim between having obtained a judgment and their actual collection of amounts due under the judgment, the Domtar drywall began to pull away from the framing, which damaged the structural integrity of the house, and resulted in financial loss exceeding the amount recovered in the lawsuit.
 {¶ 3} In the fall of 1995, the Hahns retained attorney Tobias Elsass to advise them on various legal matters connected with the drywall purchase and consequent litigation. Shortly thereafter, Elsass was suspended from the practice of law, and another attorney in his firm, Laura M. Peterman, took over the Hahns' case. In January 1996, with Peterman acting on their behalf, the Hahns filed a complaint against Domtar based upon various breach of warranty theories. Significantly, although the complaint referenced Ohio products liability law, it did not specifically raise a products liability or tort claim. Domtar removed that case to federal court and, in September 1996, the federal district court granted Domtar's motion to dismiss based upon Domtar's assertion of a lack of privity between the parties.
 {¶ 4} In so holding, the court stated, in pertinent part:
A. Lack of Privity
Plaintiffs bring their first three warranty claims under Ohio Revised Code Chapter 1302, Ohio's Uniform Commercial Code ("UCC"). * * * Defendant first argues that plaintiffs cannot maintain these three warranty claims because plaintiffs lack privity with defendant.
Ohio law provides: "[t]o support an implied warranty there must be privity between the buyer and the seller." Lonzrick v.Republic Steel Corp., 6 Ohio St.2d 227, 238 (1966). Likewise:
In order to maintain an action in contract for injury topersonal property based upon a contract of sale, which injury is alleged to be caused by a "breach of an implied warranty of merchantability" under the provisions of the Ohio Uniform Commercial Code covering contracts for sale, the plaintiff must establish a contractual relationship with the defendant.
U.S. Fidelity Guaranty Co. v. Truck Concrete EquipmentCo., 21 Ohio St.2d 244 (1970) (syllabus by the court, ¶ 1) (emphasis in original). More recently, an Ohio appellate court has stated: "Privity between the buyer and the seller is a prerequisite to a breach of warranty claim brought under the Uniform Commercial Code." Bruns v. Cooper Indus., Inc.,78 Ohio App.3d 428, 432 (1992).
Plaintiffs attempt to distinguish the above authorities, but cannot avoid the obvious result when these principles are applied to the instant case.[fn.] Even when viewed in the light most favorable to plaintiffs, the facts set forth in the complaint do not, and could not, support an inference that privity existed between plaintiffs and defendant. Plaintiffs therefore cannot maintain their UCC breach of warranty claims against defendant, and plaintiffs' UCC claims are subject to dismissal under Fed.R.Civ.P. 12(b).
 {¶ 5} By footnote, the district court made the following observation:
In their response plaintiffs make oblique reference to tort claims. Pl. resp. at 21. Plaintiffs refer to the second paragraph of the syllabus in Lonzrick, which concerns a tort claim for personal injury. Although it is not entirely clear, it appears that the Ohio Supreme Court recently upset a long-established principle that purely economic losses were not compensable under Ohio's common law tort action for breach of warranty. See LaPumav. Collinwood Concrete, 75 Ohio St.3d 64, 67 (Mar. 4, 1996) (dicta); see also C.W. Zumbiel Co. v. Reinchold Chemicals,Inc., No. C-950644, 1996 WL 400501, at *2 (Ohio App. 1st
Dist. June 5, 1996) (discussing apparent conflict betweenLaPuma and earlier cases). In any event, plaintiffs stop short of alleging a tort claim for breach of implied warranty, and the two year limitations period for a tort claim probably expired before plaintiffs filed this action in January 1996. See Ohio Rev. Code § 2503.10; Behner v. Oldsmobile Div. General MotorsCorp., No. C.A. L-87-348, 1988 WL 74176, at * 2 (Ohio App. Lucas Cty. July 15, 1988).
 {¶ 6} Regarding the Hahns' Magnuson-Moss claim, the district court stated:
* * * As [Domtar] correctly points out, the Act does not supplant state law privity requirements for warranty claims.Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 248-49, 249
n. 12 (2d Cir. 1986) (concluding that the Act does not supplant state law privity requirement, and specifically holding that Ohio law requires privity). The Court has already found that plaintiffs lack privity with defendant.
In addition, there is no writing in this case to satisfy the written warranty definition of the Act. See15 U.S.C. § 2301(6)(A), (B). Moreover, for reasons already discussed, any purported writing could not, as a matter of law, have been "part of the basis of the bargain" when [the Hahns] bought the drywall, as the Act's definition of written warranty requires.15 U.S.C. § 2301(6).
 {¶ 7} Subsequent to the decision of the federal district court dismissing the Hahns' action against Domtar, Elsass (who at that time was between suspensions of his law license) filed a notice of appeal to the Sixth Circuit Court of Appeals. In November 1997, after Elsass' second license suspension, Jennings and his firm, Collins Associates, were retained by the Hahns. Jennings was responsible for preparing their appellate brief and arguing the appeal in the Sixth Circuit. On December 10, 1998, at the conclusion of oral argument, the Sixth Circuit entered judgment from the bench affirming the decision of the federal district court. Hahn v. Domtar Gypsum (1998), 172 F.3d 872.
 {¶ 8} In November 1999, the Hahns initiated this attorney malpractice action against appellees on the basis that Peterman, in filing their cause of action against Domtar, had failed to properly raise allegations sounding in tort, and that Jennings, in prosecuting their appeal, had ignored their instructions to raise as error the district court's rejection of their Magnuson-Moss warranty claim. Appellees followed with motions for summary judgment, arguing that the Hahns' action against Peterman was time-barred, and that the Hahns failed to raise a genuine issue of fact as to whether Jennings had failed to raise a legally available argument.
 {¶ 9} The trial court agreed with appellees. Addressing the Hahns' argument that Jennings committed malpractice by waiving assertion of the Hahns' Magnuson-Moss and breach of express warranty claims, the court determined that Jennings' decision to forego pursuing this line of legal reasoning did not constitute the rejection of a legally available objective or measure, and, therefore, was not attorney malpractice. The court stated:
[The Hahns] argue that since privity is not required for their Magnuson-Moss and express warranty claims, they should be able to employ the tort damage to real estate statute of limitations rather than the usual statute of limitations for Magnuson-Moss and express warranty claims. Defendants dispute the argument that privity is not required for the Magnuson-Moss and express warranty claims.
However, even supposing that Plaintiffs are correct that privity is not required, Plaintiffs have not been able to identify a single case where the tort statute of limitations for damage to real estate was applied to a Magnuson-Moss or express warranty claim. Plaintiffs have come up with an ingenious argument that perhaps could have been used in the underlying action against Domtar. Whether such an argument would have been successful is far from obvious. The question for this Court is whether Defendants can be held liable for malpractice because they failed to recognize the possibility of utilizing Plaintiff's argument.
 {¶ 10} With regard to the claim against Peterman, the court held that the Hahns knew or should have known of a potential legal malpractice claim against her at the time the district court dismissed their cause against Domtar. Thus, because they filed their action some three years later, they had not complied with the one-year statute of limitations for legal malpractice actions and so their action against Peterman could not be maintained.
 {¶ 11} The Hahns now assign the following as error:
Assignment of Error No. 1: The Trial Court Erred by Granting Summary Judgment to Appellees Jennings and Collins Regarding Magnuson Moss.
Assignment of Error No. 2: The Trial Court Erred by Granting Summary Judgment As To Mr. and Mrs. Hahn's Claims For Breach of Confidentiality.
Assignment of Error No. 3: The Trial Court Erred in Dismissing Mr. and Mrs. Hahn's Punitive Damages Claim.
Assignment of Error No. 4: The Trial Court Erred in Granting Summary Judgment To Appellee Peterman.
 {¶ 12} The Hahns' first assignment of error asserts summary judgment in favor of Jennings and Collins was in error because the Hahns' evidence established a genuine issue of material fact on the question of whether Jennings had committed legal malpractice.
 {¶ 13} Appellate review of summary judgment motions is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court."Mergenthal v. Star Banc Corp. (1997), 122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel.Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181,183.
 {¶ 14} When a motion for summary judgment has been supported by proper evidence, a non-moving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E);Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion. Rather, that party must affirmatively set forth facts which entitle him to relief. Wingv. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 111. If the non-moving party "does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E).
 {¶ 15} In establishing a cause of action for legal malpractice, the plaintiff must show that the attorney owed a duty or obligation to the plaintiff; that the duty was breached and that the attorney failed to conform to the standard required by law; and that there is a causal connection between the attorney's conduct and the resulting loss to the plaintiff.Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus. Thus, this court has held that, "[i]n cases where the plaintiff is asserting that an attorney committed legal malpractice by failing to assert viable causes of action, * * * it is necessary for the trial court to examine whether the claims that the attorney allegedly should have asserted were at least colorable." Roseman v. Owen
(Sept. 21, 2000), Franklin App. No. 99AP-871. Expert testimony is ordinarily required to establish the breach of duty in a legal malpractice case, unless the breach is within the ordinary knowledge of lay people. McInnis v. Hyatt Legal Clinics (1984),10 Ohio St.3d 112, 113.
 {¶ 16} In response to Jennings' motion for summary judgment, the Hahns presented an affidavit by Ronald L. Burdge, an attorney who stated his practice involves handling consumer claims, specifically breach of warranty and Magnuson-Moss cases. Burdge's affidavit indicated that his review of documents related to Jennings' representation of the Hahns convinced him that Jennings had committed legal malpractice in this case. Burdge specifically stated:
6. It is my opinion that based upon the ruling of the Ohio Supreme Court in U.S. Fidelity Guaranty Co. v. Truck Concrete Equipment Co. (1970), 21 Ohio St.2d 244, at paragraph 1 of the syllabus, as a matter of law, the statute of limitations which is applicable under a Magnuson Moss Act claim depends on whether or not privity of contract exists between the parties; in this case of Michael Hahn and Marie Hahn against DOMTAR Gypsum there was no privity of contract between those parties as ruled in the decision of the Federal District Court; therefore, the Magnuson Moss Act claim was governed by the tort statute of limitations, O.R.C. § 2305.09, damage to real property which is four years from date of discovery, which is affirmed in the recent ruling of Bliss v. Marcus's Fieldbrook, Inc., (2003) WL 559406 (Ohio App. 2 Dist.). The product (wallboard) has become a fixture in the Hahns' home and no personal injury was alleged, therefore, § 2509.09 was the controlling statute of limitations in the Magnuson Moss Act claim in Hahn v. Domtar Gypsum, not R.C. § 2305.10 as set forth in Taylor v. Multi-Flo (1980),69 Ohio App.2d 19 at the syllabus. * * *
 {¶ 17} The interpretation of the law is the sole province of the court, not the expert witness. Wagenheim v. Alexander Grant Co. (1983), 19 Ohio App.3d 7, 18. An expert's affidavit supporting or opposing a motion for summary judgment must set forth "such facts as would be admissible in evidence." Civ.R. 56(E). In submitting an affidavit, an expert should not reach conclusions of law but should create issues of fact.
 {¶ 18} Here, the issue requiring an expert opinion was whether Jennings' conduct complied with the applicable standard of care when he decided not to raise the Hahns' Magnuson-Moss argument before the Sixth Circuit. In addressing this question, Burdge's affidavit specifically should have addressed whether Jennings' decision was based upon the law as it applied to the specific facts and procedural posture of the case as they existed at the time the Hahns retained Jennings' representation.
 {¶ 19} Instead, Burdge's affidavit leaps to an illogical legal conclusion not supported by the facts: that, in this particular case, because there was no privity, the Hahns' Magnuson-Moss claim was governed by a tort statute of limitations. A critical step in this analysis is missing. In some instances, Magnuson-Moss claims can be governed by a tort statute of limitations, but only where a tort cause of action has been pled. In this instance, no tort cause of action was pled and the affidavit reached legal conclusions premised upon flawed logic and so did not create a genuine issue of material fact which would overcome appellees' motion for summary judgment. SeeNelson v. Taoka (1992), 82 Ohio App.3d 101, 107-108.
 {¶ 20} None of the cases cited by the Hahns actually support their argument that their Magnuson-Moss claim remained viable despite the lack of privity and their failure to raise a tort cause of action in their complaint.
 {¶ 21} In determining whether to argue on appeal that the Hahns had a Magnuson-Moss express warranty claim, Jennings was faced with the issue of whether a Magnuson-Moss express warranty by Domtar would allow recovery under circumstances in which the warranty did not form the basis of the bargain because the Hahns never intended to purchase Domtar drywall, but thought they were purchasing another, arguably superior, brand
 {¶ 22} The Magnuson-Moss Warranty Act, Section 2301 et seq., Title 15, U.S. Code, enacted by Congress to protect consumers from misuse by merchants of express warranties, requires that, where express warranties are given, merchants may not disclaim implied warranties. The basic premise of the law indicates no seller is required to give an express written warranty, but, where one is offered, it must meet standards set forth in the law. Szubski v. Mercedes-Benz, U.S.A., L.L.C.,124 Ohio Misc.2d 82, 2003-Ohio-4640, at ¶ 12:
Under the Act, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act, or under a written warranty, implied warranty, or service contract, may bring a suit for damages and other legal and equitable relief, and, if successful, may recover attorney[']s fees. Section 2310(d).
 {¶ 23} A survey of relevant case law by this court has failed to reveal a case which supports the Hahns' argument: that Magnuson-Moss requires the enforcement of an express warranty even where the warranty did not provide the basis of the bargain under circumstances in which the consumer thought he was purchasing one product but received another. There are cases indicating an absence of privity does not defeat a UCC action in contract to enforce an express warranty. See, e.g., C.W. ZumbielCo. v. Reinchhold Chemicals, Inc. (June 5, 1996), Hamilton App. No. C-950644; Lawyers Cooperative Publishing Co. v. Muething
(1992), 65 Ohio St.3d 273; Johnson v. Monsanto Co., Paulding App. No. 11-02-02, 2002-Ohio-4613. There are cases holding that an action in contract for breach of implied warranty may be maintained where the parties have a written contract. See, e.g.,Haynes v. George Ballas Buick-GMC Truck (Dec. 21, 1990), Lucas App. No. L-89-168. There are cases permitting an action in tort for breach of implied warranty despite a lack of privity. SeeLonzrick v. Republic Steel Corp. (1966), 6 Ohio St.2d 227;Iacono v. Anderson Concrete Corp. (1975), 42 Ohio St.2d 88;LaPuma v. Collinwood Concrete (1996), 75 Ohio St.3d 64; HDMFlugservice GMBH v. Parker Hannifin Corp. (C.A.6, 2003),332 F.3d 1025; U.S. Fidelity Guaranty Co. v. Truck ConcreteEquip. Co. (1970), 21 Ohio St.2d 244. But there are no cases holding that a Magnuson-Moss action in contract to enforce an express warranty may be maintained absent privity of contract.[1]
 {¶ 24} Even if a Magnuson-Moss claim for breach of express warranty could be supported under these facts, the Hahns still had to overcome the conclusion that their action was barred by the applicable statute of limitations. The Magnuson-Moss Act prescribes no statute of limitations; instead, the relevant statute of limitations for the pertinent state is to be applied.Anderson v. Buckeye Ford (July 15, 1981), Lorain App. No. 3109;Adams v. Primax Window Co., Inc. (Aug. 9, 1999), Warren App. No. CA99-01-004. The UCC statute of limitations for actions alleging breach of a contract of sale is R.C. 1302.98, indicating that all actions for breach of contract of sale of goods must be brought within four years from the date of the breach, which is generally held to be the date of delivery. The Hahns argue that the pertinent date of accrual of their cause of action was the date that they discovered the defects in the drywall were causing structural damage to their home, not the date upon which the drywall was delivered. However, we know of no case in which a tort-style discovery rule has been applied to a breach of express warranty action sounding in contract.
 {¶ 25} According to the Hahns, the drywall, once installed, became a fixture, so that the statute of limitations for damage to real property applied; however, on this point the Hahns confuse contracts with torts, and overlook the issue that their complaint did not set forth a tort cause of action. An action for breach of express warranty under Magnuson-Moss is an action in contract, not tort, thus, the pertinent statutes of limitations are those related to actions for breach of contract. Cases cited by the Hahns in support of their position arise out of negligence, product liability or implied warranty claims and were actions in tort, despite the fact that the underlying relationship of the parties in those cases was a contractual one. See Sun Refining Marketing Co. v. Crosby Valve Gage Co.
(1994), 68 Ohio St.3d 397; Taylor v. Multi-Flo, Inc. (1980),69 Ohio App.2d 19.
 {¶ 26} In fact, Jennings did argue that the Hahns' complaint had sufficiently asserted a tort cause of action to defeat claims that their action was time-barred. However, the Sixth Circuit rejected this argument, and there was nothing more Jennings could have done to further prosecute the Hahns' case.
 {¶ 27} Thus, we cannot say Jennings overlooked or ignored a viable or colorable argument in preparing for the Hahns' appeal to the Sixth Circuit. Based upon all the information available to him, all of the case law, and the procedural posture of the case, Jennings appropriately concluded that the Hahns' best argument on appeal was the assertion that the Hahns had sufficiently alleged a cause of action sounding in tort to allow them to recover on a theory of breach of implied warranty. The fact that this argument was ultimately unsuccessful does not indicate that Jennings committed legal malpractice.
 {¶ 28} The Hahns alternately argue because they had insisted that Jennings brief and argue the Magnuson-Moss express warranty issue, Jennings committed malpractice by ignoring their instructions. Although DR 7-101(A)(1) provides that a lawyer should not intentionally fail to seek the lawful objectives of his client, DR 7-101(B)(1) also permits a lawyer to exercise his professional judgment in failing to assert a position of his client. Clearly, Jennings was not simply a "hired gun" required to advance whatever argument the Hahns brought to his attention. See Disciplinary Counsel v. Hardesty (1997), 80 Ohio St.3d 444. Instead, the Hahns relied upon him to exercise his professional judgment, and we cannot say that his decision to forego appeal of their Magnuson-Moss express warranty argument constituted legal malpractice. Our review of the relevant law does not convince us that, had Jennings in fact asserted their Magnuson-Moss warranty claims on appeal to the Sixth Circuit, the Hahns would have been able to obtain a reversal of the district court's judgment. Based upon these considerations, we overrule the Hahns' first assignment of error.
 {¶ 29} The Hahns' second assignment of error charges the trial court erred in determining that the Hahns had failed to raise a genuine issue of fact as to whether Jennings breached a duty of confidentiality by submitting to his malpractice attorney items in the Hahns' file which were related to separate litigation between the Hahns and Star Bank. According to the Hahns, this information was privileged, unrelated to their malpractice suit against Jennings, and should not have been revealed to a third party. Jennings stated in his deposition that the Star Bank file was apparently in the boxes of files given Jennings when he took over the drywall case, but that the file was not pertinent to his representation of the Hahns on that issue, that he did not know the file was there and had not realized it was among all of the documents he turned over to his counsel after learning of the malpractice suit.
 {¶ 30} The trial court rejected the Hahns' argument that these facts supported a finding of a breach of confidentiality, stating:
* * * The Code of Professional Responsibility permits a lawyer to reveal "confidences or secrets necessary to establish or collect his fee or to defend himself or employees or associatesagainst an accusation of wrongful conduct." (Emphasis added.) This Court believes that this language means that an attorney can share his entire case file with his malpractice attorney when he has been accused of malpractice. That is true even if the case file includes some material that, unbeknownst to the attorney, was not relevant to the underlying case.
* * * [I]t is the malpractice attorney who should be determining what is or is not relevant for the malpractice case. * * *
 {¶ 31} We agree. Attorney-client privilege is generally held to be waived in cases where the asserting party has placed the information at issue by bringing suit or by some other affirmative act. See, generally, Ward v. Graydon, Head Ritchey (Dec. 3, 2001), Clermont App. No. CA2001-03-038, and cases cited therein. Once he learned of the lawsuit, it was not up to Jennings to sort through the boxes of documents and determine for himself what was relevant to his defense. The submission of the file to Jennings' counsel appears to have been inadvertent, and the Hahns have submitted no evidence suggesting that they have been harmed or damaged by the file having left Jennings' custody. Based upon these considerations, the trial court properly found that, by filing their malpractice suit, the Hahns impliedly waived the attorney-client privilege with regard to all of the documents in Jennings' possession, and Jennings did not breach his duty of confidentiality by forwarding those documents to his counsel for the preparation of his defense. Thus, we overrule the Hahns' second assignment of error.
 {¶ 32} The Hahns' fourth assignment of error charges error in the trial court's decision to grant summary judgment for Peterman on the Hahns' claims of legal malpractice against her. The trial court found that the Hahns' cause of action for legal malpractice accrued in September 1996, upon the federal district court's dismissal of the complaint prepared by Peterman. The court below found that the federal court's statement that "plaintiffs stop short of alleging a tort claim," gave notice to the Hahns that, in preparing their complaint, Peterman may have committed legal malpractice. Thus, the court concluded that the Hahns' November 1999 legal malpractice complaint against Peterman was filed long after expiration of the one-year statute of limitations for legal malpractice actions, and, therefore, merited summary judgment.
 {¶ 33} In Zimmie v. Calfee, Halter Griswold (1989),43 Ohio St.3d 54, syllabus, the Ohio Supreme Court held that:
* * * [A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. * * *
 {¶ 34} Where the client has knowledge that an attorney has failed to assert a particular claim, the client is on notice that a questionable legal practice may have occurred, and the client's failure to investigate further in light of that information cannot be said to toll the time for filing an action for legal malpractice. Lintner v. Nuckols, Preble App. No. CA2003-10-020, 2004-Ohio-3348.
 {¶ 35} The Hahns argue that the federal district court dismissal did not constitute a cognizable event because, as laypersons, they were not able to fully comprehend the significance of Peterman's failure to allege a tort cause of action. They additionally argue that neither Elsass nor Jennings alerted them to Peterman's neglect, and that they were entitled to rely on the expertise of their counsel to tell them that they had a claim for legal malpractice against another attorney. These arguments are not well-taken. By the Hahns' reasoning, despite their knowledge that insufficiencies in their complaint left them without a remedy, their cause of action did not accrue until an attorney finally informed them they could sue Peterman for legal malpractice. Zimmie states that a cognizable event is one which either should have or actually did alert the client of a potential injury due to an action by an attorney. The dismissal of the district court complaint on the grounds of a failure to sufficiently allege a tort cause of action should have alerted the Hahns, even if it did not actually do so. Therefore, we overrule the Hahns' fourth assignment of error.
 {¶ 36} The Hahns' third assignment of error alleges error by the trial court in dismissing their punitive damages claim. Because we reject the Hahns' assertion that Jennings committed legal malpractice under these facts, we need not reach their assertion of punitive damages, and so overrule as moot the Hahns' third assignment of error.
 {¶ 37} The Hahns' first, second and fourth assignments of error are overruled, their third assignment of error is overruled as moot, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] Cases cited by the Hahns for the proposition that, absent privity, the UCC statute of limitations does not apply are all distinguishable. The list includes cases in which a negligence or products liability cause of action was pled: LawyersCooperative; Cincinnati Ins. Co. v. Alcorn (1993),91 Ohio App.3d 165; St. Paul Fire Marine Ins. Co. v. R.V. World
(1989), 62 Ohio App.3d 535; Prokasy v. Pearle Vision Center
(1985), 27 Ohio App.3d 44; Taylor v. Multi-Flo, Inc. (1980),69 Ohio App.2d 19; Lee v. Wright Tool Forge Co. (1975),48 Ohio App.2d 148; and cases in which the court found privity: BobbForest Products, Inc. v. Morbark Industries, Inc.,151 Ohio App.3d 63, 2002-Ohio-5370; Tingler v. Buckeye Fireworks Mfg.Co. (1983), 12 Ohio App.3d 58. The Hahns have also cited Am.Rock Mechanics, Inc. v. Thermex Energy Corp. (1992),80 Ohio App.3d 53, which involved not a negligence or warranty claim but a breach of contract claim. None of these cases is on point. The actual rule of law appears to be that, absent privity, the UCC statute of limitations does not apply so long as the plaintiffsues under a tort theory of liability. See discussion in BobbForest Products, Inc., at ¶ 56, citing Iacono and LaPuma.