[Cite as *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's Ents., Inc.*, 2015-Ohio-4884.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| CATERPILLAR FINANCIAL SERVICES CORPORATION, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | Case No. 14CA3449 |
| HAROLD TATMAN AND SON'S, ENTERPRISES, INC., ET AL., | : | |
| Defendants/Third-Party Plaintiffs-Appellants, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| v. | : | |
| VERMEER MIDWEST, INC., ET AL., | : | |
| Third-Party Defendants-Appellees. | : | RELEASED: 11/20/2015 |

<u>APPEARANCES</u>:

Michael L. Benson, Benson & Sesser, LLC, Chillicothe, Ohio, for defendant/third-party plaintiff-appellant Harold Tatman and Son's Enterprises, Incorporated.

Joel E. Sechler, Carpenter Lipps & Leland LLP, Columbus, Ohio, and Melissa R. Stull (*pro hac vice*), Soule & Stull LLC, Minneapolis, Minnesota, for third-party defendant-appellee Vermeer Manufacturing Company.

Hoover, P.J.

{¶1} Defendant/third-party plaintiff-appellant, Harold Tatman and Son's Enterprises, Incorporated ("Tatman and Son's"), appeals the judgment of the Ross County Court of Common Pleas, which dismissed Tatman and Son's second amended third-party complaint for failure to state a claim for which relief can be granted, as to the claims asserted against third-party

defendant-appellee, Vermeer Manufacturing Company ("Vermeer"). Tatman and Son's contends

that the trial court erred when it granted Vermeer's motion to dismiss. Because Tatman and

Son's tort claims are claims upon which relief may be granted, we agree in part. Accordingly, we

affirm in part, and reverse in part, the judgment of the trial court.

### I. Facts and Procedural History

{¶2}    In May 2009, Tatman and Son's purchased a Vermeer Horizontal Grinder, Model

HG8000, from Vermeer Heartland, Incorporated ("Heartland"), formerly doing business as

Vermeer of Southern Ohio, for a total purchase price of $762,823.80, inclusive of trade-ins, fees,

warranties, and finance charges. Tatman and Son's financed the purchase through Vermeer

Midwest, Incorporated ("Midwest"), which later assigned its rights and responsibilities under the

financing contract to Caterpillar Financial Services Corporation. Tatman and Son's warrantied

and registered the grinder with Vermeer, the purported manufacturer of the grinder. Vermeer

provided a written one-year or 1,000-hour warranty, which expressly disclaimed all implied

warranties. Caterpillar, Incorporated ("Caterpillar Corporate") and Heartland provided warranties

for the grinder's engine.

{¶3}    On November 8, 2012, Caterpillar Financial Services Corporation initiated a

breach of contract and replevin action against Tatman and Son's, and Douglas Tatman, Dwayne

Tatman, and Delbert Tatman, individually, alleging that Tatman and Son's had defaulted under

the terms of the financing contract and that the individuals had breached their personal

guarantees of the loan.

{¶4}    In November 2013, after having filed two prior third-party complaints, Tatman

and Son's, Douglas Tatman, Dwayne Tatman, and Delbert Tatman, filed their second amended

third-party complaint (hereinafter the "complaint") in the trial court against Midwest, Caterpillar

Corporate, Ohio Machinery Company, d/b/a Ohio Cat, Vermeer, and Heartland. Through the complaint, Tatman and Son's claimed that the grinder was broken and inoperable and that it was "financially damaged" as a result of the grinder's failure. According to the complaint, in June 2010, the grinder's engine failed. The engine was allegedly replaced by Caterpillar Corporate, Vermeer, Heartland, Midwest, "and/or" Ohio Cat. Then, in July 2011, the replacement engine failed; and the engine was replaced for a second time by Caterpillar Corporate, Vermeer, Heartland, Midwest, "and/or" Ohio Cat. Tatman and Son's contends that the installation of the third engine did not correct the failure, and that the grinder remains inoperable.

{¶5}    In count one of the complaint, Tatman and Son's alleges that Vermeer, among others, breached "express written warranties". In count two, Tatman and Son's alleges that Vermeer, among others, breached implied warranties. The third count of the complaint does not assert any claims against Vermeer. In count four, Tatman and Son's alleges that Vermeer, among others, were unjustly enriched. Finally, in the fifth and sixth counts respectively, Tatman and Son's alleges that Vermeer's attempts to repair the grinder were negligent and that the grinder was a "defective product".

{¶6}    Vermeer moved for dismissal of the claims asserted against it pursuant to Civ.R. 12(B)(6). After full briefing, the trial court granted Vermeer's motion to dismiss concluding in its written decision that the motion was "well taken". About a month later the trial court entered another order, adding "no just cause for delay" language to its previous order granting the motion to dismiss. Tatman and Son's appeals the dismissal of its claims against Vermeer, raising a single assignment of error. The notice of appeal does not identify Douglas Tatman, Dwayne Tatman, or Delbert Tatman as parties to the appeal.

**II. Assignment of Error**

{¶7}   Tatman and Son's assigns the following error for our review:

The trial court erred in granting Third-Party-Defendant/Appellee, Vermeer Manufacturing Company's, Motion for Judgment on the Pleadings (sic) because construing all material allegations in the Complaint in favor of the Defendants-Appellants, Defendants-Appellants would be entitled to relief.

### III. Standard of Review

{¶8}   As an initial matter we note that Tatman and Son's, in its appellate brief, mistakenly refers to Vermeer's motion to dismiss as a motion for judgment on the pleadings. Vermeer's motion was clearly identified as a motion to dismiss for failure to state a claim, pursuant to Civ.R. 12(B)(6). Moreover, it appears that the trial court treated Vermeer's motion as a Civ.R. 12(B)(6) motion to dismiss.

{¶9}   Because it presents a question of law, we review a trial court's decision regarding a motion to dismiss independently and without deference to the trial court's determination. *See Roll v. Edwards,* 156 Ohio App.3d 227, 2004-Ohio-767, 805 N.E.2d 162, ¶ 15 (4th Dist.); *Noe v. Smith,* 143 Ohio App.3d 215, 218, 757 N.E.2d 1164 (4th Dist.2000). "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.,* 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992). A trial court may not grant a motion to dismiss for failure to state a claim upon which relief may be granted unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union, Inc.,* 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus; *see also Taylor v. London,* 88 Ohio St.3d 137, 139, 723 N.E.2d 1089 (2000). Furthermore, when considering a Civ.R. 12(B)(6) motion to dismiss, the trial court must review only the complaint, accepting all factual allegations as true and making every reasonable inference in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988); *Estate of*

*Sherman v. Millhon,* 104 Ohio App.3d 614, 617, 662 N.E.2d 1098 (10th Dist.1995); *see also JNS Ents., Inc. v. Sturgell,* 4th Dist. Ross No. 05CA2814, 2005-Ohio-3200, ¶ 8. The court, however, need not presume the truth of legal conclusions that are unsupported by factual allegations. *McGlone v. Grimshaw,* 86 Ohio App.3d 279, 285, 620 N.E.2d 935 (4th Dist.1993), citing *Mitchell* at 193.

### IV. Law and Analysis

### A. Count One – Express Written Warranty

{¶10}   First, we must determine whether Tatman and Son's claim for breach of express written warranty under count one of the complaint is a claim upon which relief may be granted. While not entirely clear, it appears that Tatman and Son's claims that Vermeer breached the written warranty it provided by failing to repair or replace the grinder.

{¶11}   Tatman and Son's claim for breach of express written warranty is governed by the Uniform Commercial Code ("UCC") as adopted by Ohio, R.C. 1301.101, *et seq.* Ohio UCC law provides that express warranties by sellers of goods are created in one of three ways:

(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(3) Any sample or model which is made part of the basis of the bargain creates an

express warranty that the whole of the goods shall conform to the sample or

model.

R.C. 1302.26(A). To establish a claim for breach of express warranty under Ohio law, a plaintiff

must show that: (1) a warranty existed; (2) the product failed to perform as warranted; (3)

plaintiff provided the defendant with reasonable notice of the defect; and (4) plaintiff suffered

injury as a result of the defect. *Litehouse Prods., Inc. v. A.M.I. Internatl., Ltd.*, 8th Dist.

Cuyahoga No. 46834, 1984 WL 4539, *3 (Mar. 8, 1984).

{¶12}   In addition, numerous Ohio courts have recognized that there need not be privity

to impose liability for breach of an express warranty. *Bobb Forest Prods., Inc. v. Morbark*

*Industries, Inc.*, 151 Ohio App.3d 63, 2002-Ohio-5370, 783 N.E.2d 560, ¶ 51 (7th Dist.), citing

*Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612 (1958), paragraph three

of the syllabus; *Chic Promotion, Inc. v. Middletown Sec. Sys., Inc.*, 116 Ohio App.3d 363, 368,

688 N.E.2d 278 (12th Dist.1996); *Johnson v. Monsanto Co.,* 3d Dist. Paulding No. 11–02–02,

2002-Ohio-4613, ¶ 14; *Hahn v. Jennings,* 10th Dist. Franklin No. 04AP–24, 2004-Ohio-4789, ¶

23. Thus, a manufacturer can be held liable by a purchaser for breach of an express warranty

even though there is no privity between the two parties. *Johnson* at ¶ 14.

{¶13}   Ohio UCC law also allows parties to limit the type of remedies available for

breach of warranty. R.C. 1302.93(A)(1). Furthermore, Ohio courts have held that plaintiffs are

barred from seeking remedies where the express warranty expired in accordance with time limits

elucidated in the warranty. *See Sonner v. Mullinax Ford North Canton, Inc.*, 5th Dist. Stark No.

1999CA00297, 2000 WL 700313, *2 (May 22, 2000); *Paragon Networks Internatl. v. Macola,*

*Inc.*, 3rd Dist. Marion No. 9-99-2, 1999 WL 280385, *3 (Apr. 28, 1999); *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App.3d 270, 289, 714 N.E.2d 934 (10th Dist.1998).

{¶14}   Vermeer argues that the express written warranty has expired, and that the complaint therefore fails to plead an actionable breach. For its part, Tatman and Son's argues in its appellate brief that it is not restricted by the time limits of the written warranty because that warranty is not the only basis of its claim. Specifically, Tatman and Son's argues that "[a]s will come out in discovery, numerous promises were made as to the quality and reliability of the [grinder] at purchase, as well as numerous promises that were made at the time of the [grinder's] failure and alleged repair." [App. Brief at 9.]

{¶15}   Here, the express written warranty provided by Vermeer, as alleged by Tatman and Son's and attached to the complaint, states as follows:

> Vermeer Corporation (hereinafter "Vermeer") warrants each new Industrial
> product of Vermeer's manufacture to be free from defects in material and
> workmanship, under normal use and service for one (1) full year after initial
> purchase/retail sale or 1000 operating hours, whichever occurs first. This Limited
> Warranty shall apply only to complete machines of Vermeer's manufacture, parts
> are covered by a separate Limited Warranty.

{¶16}   We find that the one-year limit of the warranty bars Taman and Son's claim for breach of express written warranty. The express terms of the warranty state that it is valid for one-year from the original purchase date. Tatman and Son's bought the grinder in May 2009 and did not allege any problems with the product until June 2010. Thus, the express written warranty clearly expired by the time the grinder failed.

{¶17}   We further reject Tatman and Son's argument that the claim has a basis in the alleged numerous promises made by Vermeer as to the quality and reliability of the grinder. In its complaint, Tatman and Son's alleges that Vermeer "breached its duty to Tatman pursuant to the written warranty." [Complaint at ¶ 45.] Moreover, the only allegation in the complaint regarding a written warranty from Vermeer was that "[t]he Machine was warrantied by and registered with Vermeer Corporate on or about May 14, 2009, and a true and accurate copy of said warranty/registration is attached hereto as Exhibit D." [Complaint at ¶ 26.] Nowhere does the complaint identify any other "promises" that Tatman and Son's relied upon other than the written limited warranty attached to the complaint as Exhibit D. Moreover, we may not rely upon Tatman and Son's untimely and gratuitous allegation that "numerous promises" in addition to the written warranty were made, because in reviewing a judgment of dismissal under Civ.R. 12(B)(6) we may not consider evidence or factual allegations outside of the complaint. *State ex rel. Scott v. Cleveland*, 112 Ohio St.3d 324, 2006-Ohio-6573, 859 N.E.2d 923, ¶ 26. Accordingly, we find that Tatman and Son's has pleaded an express warranty claim based only upon Vermeer's written limited warranty. Because that warranty expired prior to the grinder's alleged failure, no breach of the express written warranty exists; and the trial court did not err in dismissing count one of the complaint.

### B. Count Two - Implied Warranty in Contract

{¶18}   Tatman and Son's second count of its complaint alleges breach of implied warranties. Specifically, the count alleges that Vermeer impliedly warranted that the grinder would be merchantable and substantially free of defects and non-conformities in both material and workmanship, and that Vermeer breached those warranties by providing a grinder that was defective and not fit for its ordinary purpose. Vermeer contends that the breach of implied

warranty claim fails as a matter of law because its express written warranty disclaims any implied warranties as is permitted under R.C. 1302.29(B).

{¶19}   Under Ohio law, implied warranty claims can be brought under both contract law and tort law. *Johnson*, 2002-Ohio-4613, at ¶¶ 11, 26.  Here, it is not clear from the complaint whether Tatman and Son's is advancing a breach of implied warranty claim under the UCC, or through tort law. In this section of our decision, we explore whether the complaint alleges a valid claim under Ohio contract law.

{¶20}   R.C. 1302.27, implied warranty of merchantability, and R.C. 1302.28, implied warranty of fitness for a particular purpose, governs UCC contract claims for breach of implied warranty. R.C. 1302.29(B) governs disclaimers of warranty. It provides:

> (B) Subject to division (C) of this section, to exclude or modify the implied
>
> warranty of merchantability or any part of it the language must mention
>
> merchantability and in case of a writing must be conspicuous, and to exclude or
>
> modify any implied warranty of fitness the exclusion must be by a writing and
>
> conspicuous. * * *

{¶21}   Furthermore, in order to sustain a contract-based breach of implied warranty claim, the parties must be in privity. "[L]ongstanding Ohio jurisprudence provides that purchasers * * * may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 2007-Ohio-3609, 871 N.E.2d 1141, ¶ 26; *see also Johnson*, 2002-Ohio-4613, at ¶¶ 11-12 (the UCC's implied warranty of merchantability and implied warranty of fitness are not enforceable against manufacturers who are not in privity with the purchaser).

{¶22}   Here, Tatman and Son's is not in privity with Vermeer because, in Ohio, vertical privity exists only between immediate links in the distribution chain. *Curl* at ¶ 32. Tatman and Son's alleges in its complaint that it purchased the grinder from Heartland, not directly from Vermeer. Accordingly, to the extent that Tatman and Son's claim for breach of implied warranties advances a claim under contract law, such claim fails as a matter of law for want of privity. Furthermore, because the lack of privity is dispositive of this issue, we decline to reach the issue of disclaimer of implied warranties under R.C. 1302.29(B). The trial court did not err in dismissing count two of the complaint insofar as it advances a claim for breach of implied warranty under contract law.

### C. Counts Two, Five, and Six - Implied Warranty in
### Tort/Strict Liability and Negligence

{¶23}   Tatman and Son's complaint alleges a variety of tort claims. For instance, in count five of the complaint Tatman and Son's claims that Vermeer was negligent in its "repair/replacement/installation of the Machine and/or engines inside the Machine". For this negligence claim, Tatman and Son's "must show the existence of a duty, a breach of that duty, and that the breach of that duty proximately caused the plaintiff's injury." *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 18, citing *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989).

{¶24}   Additionally, Tatman and Son's complaint brings claims for breach of implied warranty in tort and "defective product".[1] Count six of Tatman and Son's complaint alleges that

---

[1] Again, count two of the complaint does not clearly state that the cause of action is a breach of implied warranty in tort, rather than a contract-based breach of implied warranty claim. Nonetheless, and in the interest of justice, we must determine whether a cognizable claim for breach of implied warranty in tort has been sufficiently pleaded in the complaint under count two.

"[a]s a direct and proximate result of the defective Machine and/or engine(s) manufactured and supplied by * * * Vermeer Corporate * * * Tatman has suffered and continues to suffer damages and losses in an amount in excess of $25,000.00." [Complaint at ¶ 68.] While Tatman and Son's labels the claim "Defective Product", the claim essentially enumerates the elements necessary to prove a claim of breach of implied warranty in tort. Thus, we will treat count six of Tatman and Son's complaint as a claim for breach of implied warranty in tort.

{¶25}    " 'Implied warranty in tort' is a common-law cause of action that imposes liability upon a manufacturer or a seller for breach of an implied representation that a product is 'of good and merchantable quality, fit and safe for its ordinary intended use * * *.' " *White v. DePuy, Inc.*, 129 Ohio App.3d 472, 478, 718 N.E.2d 450 (12th Dist.1998), quoting 76 Ohio Jurisprudence 3d, Products Liability, Section 39, at 470 (1987). A claim for breach of implied warranty in tort requires the showing of the following elements: (1) "the existence of a defect;" (2) "the defect was present at the time the product left the hands of the manufacturer; and" (3) "the plaintiff's injury was directly and proximately caused by the defect." *Johnson*, 2002-Ohio-4613, at ¶ 26, citing *Crow v. Parker*, 3d Dist. Allen No. 1-99-13, 1999 WL 446438 (June 29, 1999). The parties do not need to be in privity in order to bring a breach of implied warranty in tort claim. *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185 (1966), paragraph one of the syllabus. "Moreover, a breach of implied warranty in tort claim is within an entirely separate body of law from that applied under the UCC." *Johnson* at ¶ 26. And because "implied warranty in tort is not a matter of contract, * * * contractual provisions disclaiming implied warranties and limiting liability to repair and replacement do not affect [a] claim based upon implied warranty in tort." *Avenell v. Westinghouse Elec. Corp.*, 41 Ohio App.2d 150, 156, 324 N.E.2d 583 (8th Dist.1974).

{¶26}   Vermeer contends that Tatman and Son's tort claims are barred by the economic loss rule. Under the economic loss rule, plaintiffs who have only suffered an economic loss from a defective product - defined as losses attributable to the decreased value of the defective product itself (direct economic loss) and consequential losses by the purchaser of the defective product (indirect economic loss) - cannot recover economic losses premised on tort theories of recovery. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St.3d 40, 43-45, 50-51, 537 N.E.2d 624 (1989); *see also Corporex Dev. & Constr. Mgt., Inc. v. Shook*, 106 Ohio St.3d 412, 414, 2005-Ohio-5409, 835 N.E.2d 701, ¶ 6 ("The economic- loss rule generally prevents recovery in tort for damages for purely economic loss."). However, the Court in *Chemtrol* added that if the plaintiff is a consumer who is not in privity with the defendant seller or manufacturer, then "an action in negligence may be an appropriate remedy," and "an action in tort for breach of * * * implied warranty, or an action in in strict liability,[2] may be maintained for purely economic loss." *Id*. at 45-46, 49. Thus, while *Chemtrol* stated the principle that a consumer not in privity with a manufacturer could bring a tort action solely for economic loss, the case itself did not involve such a situation since privity did exist between the parties in that case. *Id*. at 49, 51. Several years later, in *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 661 N.E.2d 714 (1996), the Ohio Supreme Court was presented a case in which the parties lacked privity and in which the plaintiffs presented tort claims seeking the recovery of economic loss. In *LaPuma*, plaintiff consumers brought a breach of implied warranty in tort claim against the supplier of concrete, to recover economic loss damages resulting from the installation of a concrete driveway that became speckled in color rather than the uniform brown color desired by the plaintiffs. *Id*. at 65. Ultimately, the Court denied the defendant's motion for summary judgment

---

[2] "[T]here are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort * * *." *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 322, 364 N.E.2d 267 (1977). Thus, the two theories have been used interchangeably and analyzed together. *Avenell* at 156, fn. 5.

and allowed plaintiffs to pursue their breach of implied warranty in tort claim to recover economic loss. *Id*. at 67. In doing so, the Court stated as follows:

> The LaPumas do have a common-law claim against Collinwood. In *Iacono v. Anderson Concrete Corp.* (1975), 42 Ohio St.2d 88, 71 O.O.2d 66, 326 N.E.2d 267, this court allowed a plaintiff to recover against a concrete supplier for damage to the plaintiff's new driveway. In *Iacono*, small, round holes formed in the plaintiff's driveway soon after a contractor completed installing it, and the plaintiff brought suit against the contractor and the supplier for the damage to the driveway itself. Despite the lack of privity between the plaintiff and the supplier, this court held that the plaintiff could maintain a tort action against the supplier based upon a theory of breach of implied warranty. While the imperfections to the driveway in the present case concern its color, we do not find that that significantly distinguishes this case from *Iocono*. Therefore, the LaPumas may pursue a claim of breach of implied warranty against Collinwood.

*Id*.

{¶27} Vermeer, in its appellate brief, relies upon the Ohio Supreme Court's decision in *Corporex*, *supra*, for its proposition that "the economic-loss rule bars recovery in tort for purely economic losses sustained by a commercial buyer because commercial parties 'must be allowed to bargain freely to allocate the risks attendant to their undertaking, including the possibility of purely economic damages.' " [Amended App. Brief at 13], quoting *Corporex* at ¶ 11. A review of the *Corporex* decision, however, indicates that Vermeer's proposition of law is misplaced.

{¶28}   In *Corporex*, Dublin Suites, Inc. ("DSI") contracted with Corporex Constructors, Inc. ("Corporex") for the construction of a hotel. *Id.* at ¶ 3. In turn, Corporex subcontracted with Shook, Inc. ("Shook") to complete all the concrete work related to the hotel. *Id.* The subcontract between Corporex and Shook identified DSI as the project owner. *Id.* After Shook failed to complete the concrete work as delineated "under the subcontract", DSI and Corporex filed suit against Shook for purely economic damages, alleging breach of contract, breach of express warranty, breach of implied warranty, negligence, and failure to perform in a workmanlike manner. *Id.* at ¶ 4. The trial court granted Shook judgment on the pleadings on all of DSI's claims, based upon the economic-loss rule. *Id.* On appeal to the Tenth District Court of Appeals, the appellate court reinstated DSI's negligence and implied warranty claims against Shook. *Id.* at ¶ 5. Shook then appealed to the Ohio Supreme Court and the Court accepted jurisdiction. *Id.* The Ohio Supreme Court reversed the appellate court's judgment reinstating DSI's claims of negligence and implied warranty against Shook. *Id.* at ¶ 14. In doing so, the Court held that: "Under the economic-loss rule, privity or a sufficient nexus that could serve as a substitute for privity may impose only those contractual duties and liability for breach of those duties agreed to by the parties to the contract, and no more." *Id.* at paragraph one of the syllabus. The Court went on to reason that:

> Because the underlying duties are created by a contract to which DSI is not a party, no tort action lies in DSI's favor. Instead, DSI, the project owner, retains its right to file a breach-of-contract claim against Corporex, the contractor, for damages permitted under its contract, and Corporex may, in turn, recover any damages against Shook, the subcontractor, permitted by the subcontract.

*Id.* at ¶ 11.

{¶29}   Thus, read in its proper context, it appears that the *Corporex* decision is distinguishable from the present case because the plaintiff in *Corporex* sought to recover economic damages in tort for breach of duties assumed only by contract. In other words, *Corporex* is limited to its facts and does not by itself stand for the overall proposition that "the economic-loss rule bars recovery in tort for purely economic losses sustained by a commercial buyer" as argued by Vermeer.

{¶30}   Furthermore, at least one Ohio appellate court has extended a breach of implied warranty in tort cause of action to commercial plaintiffs, holding that: "[A] consumer, commercial or not, can maintain a claim for breach of implied warranty/strict liability against a manufacturer, not in privity, for purely economic loss[.]" *Ohio Dept. of Adm. Servs. v. Robert P. Madison Internatl., Inc.*, 138 Ohio App.3d 388, 397, 741 N.E.2d 551 (10th Dist.2000); *but see Apostolos Group, Inc. v. BASF Constr. Chems., LLC*, 9th Dist. Summit No. 25415, 2011-Ohio-2238, ¶ 16 (holding that a breach of implied warranty in tort cause of action for purely economic loss resulting from defective products is not available to commercial buyers). The Tenth District Court of Appeals stated that it could find "no basis for distinguishing between so-called commercial and noncommercial buyers." *Id*. at ¶ 396. The court further noted that no distinction was necessary because "the doctrine of implied warranty is designed to protect 'consumers' who are not in privity of contract." *Id*.

{¶31}   Here, Tatman and Son's is a consumer who is maintaining tort claims against a manufacturer, *not in privity*, for purely economic loss. Thus, Tatman and Son's tort claims alleging purely economic harm fall into the category of claims described in *LaPuma*. Moreover, agreeing with the rationale set forth in *Robert P. Madison*, we see no reason to treat Tatman and Son's, a commercial consumer, differently than noncommercial consumers. Accordingly, based

on the case law discussed above, we find that the economic loss rule does not bar Tatman and Son's tort claims.

{¶32}   We further note that the Ohio Products Liability Act ("OPLA") does not preempt Tatman and Son's common law tort claims. While it has been determined that R.C. 2307.71(B)[3] of the OPLA abrogates all common law product liability claims accruing after April 7, 2005, *see Quill v. Albert M. Higley Co.*, 2014-Ohio-5821, 26 N.E.3d 1187, ¶¶ 36-38 (5th Dist.), it does not preempt the claims alleged here. R.C. 2307.72(C) states that: "Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code." Economic loss only includes "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." R.C. 2307.71(A)(2). Meanwhile, the OPLA defines a product liability claim as a claim seeking compensatory damages for "death, physical injury to person, emotional distress, or physical damage to property *other than the product in question * * *.*" (Emphasis added.) R.C. 2307.71(A)(13). Thus, because Tatman and Son's seeks damages for economic loss - i.e. damage to the value of the alleged defective grinder and consequential damages therefrom – its claims do not fall under the purview of the OPLA and are not product liability claims. *See LaPuma*, 75 Ohio St.3d at syllabus, 661 N.E.2d 714 ("Although a cause of action may concern a product, it is not a product liability claim within the purview of Ohio's product liability statutes unless it alleges damages other than economic ones, and a failure to allege other than economic damages does not destroy the claim, but rather removes it from the purview of those statutes.").

---

[3] R.C. 2307.71(B) states: "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action."

{¶33}   Thus, for the reasons stated above, the trial court erred in dismissing count two of the complaint insofar as it raised a breach of implied warranty in tort claim, count five of the complaint (negligence), and count six of the complaint (defective product/implied warranty in tort).

### D. Count Four - Unjust Enrichment

{¶34}   Finally, count four of Tatman and Son's complaint contains a claim for unjust enrichment. Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). An unjust enrichment claim is intended " 'not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on a defendant.' " *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 278, ¶ 21, quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954). To effectively raise an unjust enrichment claim, a plaintiff must allege: " '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.' " *Hambleton v. R.B. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984), quoting *Hummel* at 525.

{¶35}   The Ohio Supreme Court has held that in order for a plaintiff to confer a benefit on a defendant, an economic transaction must exist between the parties. *Microsoft* at ¶ 22. For instance, in *Microsoft* the Court found that the plaintiff had not conferred a benefit on the defendant, even though the parties were bound by an end-user licensing agreement, because the plaintiff did not directly purchase goods from the defendant. *Id.*

{¶36}   Here, Tatman and Son's argues that since it purchased a Vermeer grinder for a "large sum of money", it has benefitted Vermeer. Tatman and Son's complaint, however, unequivocally alleges that the grinder was purchased from Heartland; and not directly from Vermeer. Thus, relying upon the *Microsoft* decision, we find that Tatman and Son's unjust enrichment claim is insufficient on the basis that it lacks a factual allegation of a benefit conferred on Vermeer by Tatman and Son's. Consequently, the trial court correctly dismissed count four of the complaint.

### V. Conclusion

{¶37}   Based on our review of the complaint, we conclude that Tatman and Son's failed to state a valid cause of action against Vermeer under counts one (express written warranty) and four (unjust enrichment) of the complaint. Moreover, insofar as Tatman and Son's breach of implied warranty claim under count two of the complaint relies upon Ohio contract law, we also conclude that the count fails to state a valid claim. However, as indicated above, Tatman and Son's has stated valid causes of action in counts five (negligence) and six (defective product/breach of implied warranty in tort) of its complaint. And insofar as Tatman and Son's breach of implied warranty claim under count two of the complaint relies upon Ohio tort law, we conclude that the count raises a claim upon which relief may be granted. We also reiterate that count three of the complaint does not state any claims against Vermeer. Accordingly, we sustain Tatman and Son's sole assignment of error in part, and overrule it in part. The judgment of the trial court is affirmed in part, and reversed in part. We remand this case for proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED for proceedings consistent with this opinion. Defendant/Third-Party Plaintiff-Appellant and Third-Party Defendant-Appellee shall equally divide the costs herein taxed.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, A.J.: Concur in Judgment and Opinion.

For the Court

BY: _____
        Marie Hoover
        Presiding Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**