ALLISON L. HARRISON, Allison L. Harrison Law, LLC, 175 S. 3rd St., Suite 200, Columbus, Ohio 43215, For Plaintiff-Appellee
ELLIOT B. GARVEY, Garvy Law LLC, PO Box 21137, Columbus, Ohio 43221, For Plaintiff-Appellee
JON J. SAIA, 713 South Front Street, Columbus, Ohio 43206, For Defendant-Appellant
JON L. JENSEN, 98 North Union Street, Delaware, Ohio 43015, For Defendant-Appellant
JUDGES: Hon. William B. Hoffman, P.J., Hon. Patricia A. Delaney, J., Hon. Craig R. Baldwin, J.
OPINION
Hoffman, P.J.
{¶ 1} Defendant-appellant AASE Sales LLC ("AASE Sales") appeals the May 4, 2017 Judgment Entry entered by the Delaware County Court of Common Pleas, which granted judgment in favor of plaintiff-appellee Richard Mark Hubbard ("Hubbard"), following a bench trial.
STATEMENT OF THE FACTS AND CASE
{¶ 2} AASE Sales is an Ohio limited liability corporation with its principal place of business in Galena, Delaware County, Ohio, specializing in the sale of Porsche specific parts and supplies as well as the sale of restored, classic model Porsche automobiles. AASE Sales advertises for sale on its website various restored, classic Porsche automobiles. Ron Thomas is the president of AASE Sales.
{¶ 3} Hubbard operates Hubbard Auto Sales, a classic car dealership located in Scottsdale, Arizona. As part of his job responsibilities, Hubbard purchases vehicles to place in inventory. Hubbard, himself, is a classic car enthusiast, attending car shows and auctions. He personally owns 8 collectible automobiles, which he occasionally takes to car shows. Hubbard rarely drives the vehicles and views them as investments. Hubbard stores his vehicles at Hubbard Auto Sales and displays them in a separate room. Hubbard does not personally insure the vehicles in his personal collection. Rather, the vehicles in his collection are insured through a policy issued to Hubbard Auto Sales, which also covers the inventory of the business.
{¶ 4} Hubbard searches the internet to find vehicles for inventory for Hubbard Auto Sales as well as for his personal collection. While searching the internet, Hubbard followed a link to AASE Sales'
*1032 website where he found an advertisement for a 1963 Porsche 356 B/1600 T6 coup ("the 1963 Porsche"), a vehicle his father had expressed an interest in purchasing. Hubbard contacted Thomas who personally owned the 1963 Porsche. Hubbard informed Thomas he was interested in the 1963 Porsche for his father, and he was buying it for a personal collection. Thomas reiterated the information contained on the website, to wit: the Porsche was "matching numbers", "per factory Kardex", and "# 1 restored" condition. The engine number referenced in the online advertisement matched the number on the engine of the 1963 Porsche, and the VIN number referenced in the same advertisement matched the number on the chassis of the vehicle.
{¶ 5} Hubbard purchased the 1963 Porsche and another Porsche from AASE Sales for $74,000/vehicle. Hubbard did not see the vehicles prior to the purchase. He did not have the vehicles examined by anyone prior to the purchase. Hubbard's father wrote a check from his personal account for the purchase price. After AASE Sales received the payment, Thomas sent Hubbard a bill of sale reflecting Hubbard as the purchaser and indicating the 1963 Porsche was sold "as is". Tr. at 38. Hubbard received the bill of sale on April 8, 2015. On April 8, 2015, Hubbard instructed Thomas to transfer title of the 1963 Porsche to Hubbard Auto Sales. Hubbard did not complain to Thomas about the condition of the vehicle or the quality of the restoration when the vehicle was delivered on or about April 17, 2015.
{¶ 6} Hubbard had additional work completed on the vehicle, totaling over $3600.00. Hubbard ordered a Porsche Certificate of Authenticity because the 1963 Porsche did not arrive with a factory Kardex as the advertisement had stated. After receiving the Certificate of Authenticity, Hubbard compared the numbers on the vehicle to those on the Certificate and found the numbers did not match. Hubbard contacted AASE Sales on October 15, 2015, regarding the discrepancy. Hubbard and Thomas exchanged a series of emails.
{¶ 7} On April 7, 2016, Hubbard filed a complaint against AASE Sales, asserting four causes of action, to wit: rescission, breach of express warranty, violations of the Ohio consumer sales practices act, and fraud/negligent misrepresentation. Hubbard sought rescission, or, in the alternative, actual damages; consequential and incidental damages; punitive damages; and attorney fees. On May 6, 2016, AASE filed an answer and counterclaim, alleging abuse of process.
{¶ 8} Hubbard filed a motion for partial summary judgment on February 21, 2017. AASE Sales filed a motion for summary judgment and/or motion to dismiss for lack of standing on the same day. Via Judgment Entry filed March 27, 2017, the trial court denied the parties' respective motions.
{¶ 9} The matter proceeded to bench trial on April 6, 2017.
{¶ 10} At trial, Hubbard testified about his professional and personal dealings with classic cars. Hubbard detailed how he came to learn of the 1963 Porsche, the purchase of the vehicle, and the subsequent issues discovered upon his receipt of the car. He also explained the term "numbers matching" means "the engine, transmission and body all match the car that was originally built." Tr. at 30. Hubbard added in order to verify a car as numbers matching, one would look at a build sheet or, in the case of a Porsche, the factory Kardex or Certificate of Authenticity. Hubbard also stated the term "restored number one" means the vehicle is "the highest quality of restored car that is out there." Tr. at 33.
*1033 {¶ 11} According to Hubbard, when the 1963 Porsche arrived, he found the restoration was not "a number one level quality of restoration" and instructed Thomas to transfer the title into the name of Hubbard Auto Center. However, correspondence between the parties revealed Hubbard contacted Thomas on April 8, 2015, regarding the title. The cars were shipped April 10, 2015, and delivered about April 17, 2015. Title was put in the Hubbard Auto Center name on April 15, 2015.
{¶ 12} Although Hubbard did not know the type of legal entity Hubbard Auto Center was, he explained he and his father evenly divide all costs, expenses, and profits at the end of each month. He noted he receives 50% of whatever the business does in a particular month.
{¶ 13} Lance Coran was called as an expert in the field of classic automobiles. Coran personally researched the 1963 Porsche with Porsche Cars North America. He physically inspected the 1963 Porsche and produced a certified inspection report, in which he concluded the 1963 Porsche was a non-numbers matching vehicle. According to Coran, "matching numbers," as the term is used in the classic car market, means the vehicle is "in its original state of manufacture, and it possesses all the parts that are associated with the original manufacture of the vehicle at its time." Tr. at 116. He detailed the manner in which a vehicle is physically inspected to establish whether it is a "matching numbers" vehicle.
{¶ 14} Caron found the 1963 Porsche to be in good or very good condition, but noted the actual advertisement upon which Hubbard relied did not accurately describe the vehicle. The 1963 Porsche had a replacement motor. Caron explained, "A period correct engine does not possess the original number on the engine that is associated with the original car", but "possesses an engine out of another vehicle from another time period." Tr. at 120. Caron stated there is a significant difference in the value of a classic car with a period correct engine and a classic car with a "matching numbers" engine, adding the value of a non-numbers matching vehicle is 30% less than the retail value of a "matching numbers" vehicle.
{¶ 15} Caron explained a restored # 1 condition vehicle is "a show car", having very few, if any, flaws. Tr. at 122. A restored # 1 vehicle is "deemed to be completely original as restored, and possess the highest rating in both number and condition for a motor vehicle to be displayed or showed." Id. "Best in show" quality includes restored # 1 condition. Caron testified he did not believe the 1963 Porsche was in restored # 1 condition. Caron conceded his inspection report contained typographical errors, but such did not affect his conclusions.
{¶ 16} At the close of Hubbard's case, AASE Sales moved for directed verdict. The trial court denied the motion, finding disputed facts still remained.
{¶ 17} Bryce Kline, sales manager for AASE Sales, testified he was familiar with the 1963 Porsche as he had detailed the vehicle and checked the engine numbers prior to the sale to Hubbard. Kline stated he did not observe any scrapes, dings, creases or other damage while he was detailing the 1963 Porsche. On cross-examination, Kline indicated he did not do any wet sanding or other substantial work on the vehicle.
{¶ 18} Theodore Zombeck is a Porsche historian, buyer and seller, and restorer. Zombeck has judged national level Porsche car shows. Zombeck testified, in approximately March, 2015, he photographed the 1963 Porsche for AASE Sales to use in its advertisement. Zombeck stated he inspected *1034 the vehicle and did not observe any creases, dings, scratches, or damage. Zombeck added he found the 1963 Porsche to be in number one show condition and number one restored condition.
{¶ 19} AASE Sales owner and president Ron Thomas testified he has been collecting and selling Porsche vehicles since 1982. Thomas noted he has seen issues with Certificates of Authenticity received from Porsche so he uses Brett Johnson's book[1] and a Porsche factory handbook to verify the date of the engine lines up with the production numbers and matches the date of the build of the vehicle. He stated his belief the 1963 Porsche was a matching numbers vehicle, and the engine in the vehicle was the original motor. Thomas added he had shown the 1963 Porsche in area car shows, and the vehicle had won best of show titles.
{¶ 20} When Hubbard called inquiring about the 1963 Porsche, Thomas told Hubbard he had owned the car for 10 to 12 years and, "as far as [he knew]", it had been restored about five years ago. Tr. at 173. Thomas acknowledged Hubbard mentioned he was purchasing the 1963 Porsche for his father. Prior to receiving payment from Hubbard for the vehicle, Thomas received instructions to title the 1963 Porsche to Hubbard Auto Sales. At that point, Thomas knew Hubbard was purchasing the vehicle for resale. Thomas stated he had $3800 worth of work done on the vehicle, including a full detail and brake work. Thomas did not charge Hubbard for this work. Thomas stated the 1963 Porsche had no damage when it was shipped to Hubbard. Thomas added Hubbard contacted him regarding the matching numbers issue in October, 2015.
{¶ 21} On cross-examination, Thomas conceded he never had the Kardex for the vehicle although he advertised it as such. Thomas explained the Kardex is the same as the Certificate of Authenticity, which he had at one time, but could not locate at the time of the sale. Thomas entered the information about the 1963 Porsche on the website from memory. He was adamant the engine corresponded with the product numbers in the Brett Johnson book, which gives date ranges. Thomas insisted the vehicle had the original engine. Thomas acknowledged the only way to verify which engine was fitted into a specific chassis would be to examine the handwritten logs kept on the assembly line.
{¶ 22} At the close of AASE Sales' case, Hubbard moved for directed verdict on AASE Sales' counterclaim for abuse of process. The trial court granted the motion, finding AASE Sales did not present evidence to support the counterclaim.
{¶ 23} Via Judgment Entry filed May 4, 2017, the trial court granted judgment in favor of Hubbard.
{¶ 24} It is from this judgment entry, AASE Sales appeals, raising the following assignments of error:
I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR LACK OF STANDING.
II. THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING APPELLEE'S MOTION TO DISMISS APPELLANT'S COUNTERCLAIM AT THE CONCLUSION OF APPELLANT'S CASE.
III. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THE APPELLEE HAD PROVEN HIS CLAIM OF BREACH OF EXPRESS WARRANTY AND GRANTING RECISSION [SIC] OF THE CONTRACT.
*1035 IV. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING APPELLEE RELIEF ON COUNTS 3 AND 5 OF HIS COMPLAINT PURSUANT TO THE CONSUMER SALES PRACTICES ACT.
V. THE TRIAL COURT ERRED IN AWARDING DAMAGES IN THE AMOUNT OF $5,084.55 AFTER THE APPELLEE HAD ELECTED RECISSION [SIC] OF THE VEHICLE PURCHASE AS HIS REMEDY.
I
{¶ 25} In its first assignment of error, AASE Sales asserts the trial court erred in denying its motion to dismiss for lack of standing.
{¶ 26} Standing determines " 'whether a litigant is entitled to have a court determine the merits of the issues presented.' " State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. Of Commrs. , 132 Ohio St.3d 47, 2012-Ohio-1861, 969 N.E.2d 224, ¶ 10, quoting Ohio Contrs. Assn. v. Bicking , 71 Ohio St.3d 318, 643 N.E.2d 1088 (1994). Whether a party has established standing to bring an action before the court is a question of law, which we review de novo . Cuyahoga Ct. Bd. Of Commrs. v. State , 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23.
{¶ 27} Before a court can consider the merits of a legal claim, a litigant must prove he has standing to sue. ProgressOhio.org, Inc. v. JobsOhio , 139 Ohio St.3d 520, 2014-Ohio-2382, 13 N.E.3d 1101, ¶ 7. To establish standing, a litigant must show he has "suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." Moore v. Middletown , 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 22, citing Lujan v. Defenders of Wildlife , 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing does not depend on the merits of the plaintiff's claim. Moore at ¶ 23. Rather, standing depends on whether the plaintiff has alleged such a personal stake in the outcome of the controversy that he is entitled to have a court hear his case. Clifton v. Blanchester, 131 Ohio St.3d 287, 2012-Ohio-780, 964 N.E.2d 414, ¶ 15 ; State ex rel. Dallman v. Franklin Cty. Court of Common Pleas, 35 Ohio St.2d 176, 178-179, 298 N.E.2d 515 (1973).
{¶ 28} Hubbard testified he searches the internet to find vehicles for inventory for Hubbard Auto Sales as well as for his personal collection. While searching the internet, he followed a link to AASE Sales' website where he found an advertisement for the 1963 Porsche. Hubbard indicated the 1963 Porsche was a vehicle his father had expressed an interest in purchasing. Hubbard personally contacted Thomas and informed Thomas he was interested in the 1963 Porsche for his father, and was buying it for a personal collection. Hubbard conducted all the negotiations for the purchase of the vehicle, ensured the wire transfer of the payment, and arranged for transportation of the vehicle. Hubbard was listed as the buyer on the bill of sale. Hubbard and his father planned to share ownership and expenses of the 1963 Porsche. Upon receipt of the 1963 Porsche, Hubbard personally paid for repairs to and an inspection of the vehicle. He also incurred ongoing expenses related to the maintenance and storage of the vehicle.
{¶ 29} With respect to the business, Hubbard Auto Sales, Hubbard testified he and his father evenly divide all costs, expenses, and profits at the end of each month. Hubbard receives 50% of whatever the business earns in a given month.
{¶ 30} We find the aforesaid evidence demonstrates Hubbard initially intended *1036 some private ownership interest in the vehicle, even though the vehicle was eventually titled to Hubbard Auto Center. We find the trial court properly concluded Hubbard had standing to bring the within action against AASE Sales.
{¶ 31} AASE Sales' first assignment is overruled.
II
{¶ 32} In its second assignment of error, AASE Sales challenges the trial court's granting of Hubbard's motion for directed verdict[2] on the counterclaim at the close of AASE Sales' case.
{¶ 33} Our standard of review for the grant or denial of a motion for a directed verdict is whether there is probative evidence which, if believed, would permit reasonable minds to come to different conclusions as to the essential elements of the case, construing the evidence most strongly in favor of the non-movant. Sanek v. Duracote Corp. , 43 Ohio St.3d 169, 539 N.E.2d 1114 (1989). A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Shadle v. Morris , 5th Dist. Stark No. 2012CA00073, 2013-Ohio-906, 2013 WL 987883.
{¶ 34} The three elements of the tort of abuse of process are (1) that a legal proceeding has been set in motion in proper form and with probable cause, (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed, and (3) that direct damage has resulted from the wrongful use of process. Yaklevich v. Kemp, Schaeffer & Rowe Co., 68 Ohio St.3d 294, 626 N.E.2d 115 (1994), paragraph one of the syllabus.
{¶ 35} "Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." Robb v. Chagrin Lagoons Yacht Club (1996), 75 Ohio St.3d 264, 271, 662 N.E.2d 9. "In an abuse of process case, 'the improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club'." (Emphasis added.) Id., quoting Prosser & Keeton on Torts, (5 Ed.1984), 898, Section 121. "Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or 'abuse,' of process. * * * To make a case of abuse of process a claimant must show that one used process with an 'ulterior motive,' as the gist of [the] offense is found in the manner in which process is used. * * * There must also be shown a further act in the use of process not proper in the regular conduct of the proceeding." Clermont Environmental Reclamation Co. v. Hancock (1984), 16 Ohio App.3d 9, 11, 474 N.E.2d 357.
{¶ 36} At the close of AASE Sales' case, Hubbard moved for directed verdict on the counterclaim, arguing AASE Sales did not present any evidence to support the claim. In response, AASE Sales argued "there's a question whether [Hubbard] ever paid a dime for this vehicle." Tr. at 209. AASE Sales asserted the number on the car matched the number in the advertisement. AASE Sales added Hubbard's expert testified he called Porsche Cars North America and verified the engine number was associated with the 1963 Porsche; therefore, was a matching *1037 numbers vehicle. Although such assertions go to rebut the claims forming the basis of Hubbard's complaint, such alone does not support AASE Sales' counterclaim for abuse of process. We find the trial court properly granted direct verdict, noting it had not heard anything which would support a claim for abuse of process.
{¶ 37} In its Brief to this Court, AASE Sales asserts Hubbard sought judgment against AASE Sales for breach of contract and violations of the Ohio Consumer Sales Practices Act despite the fact "he never spent a single cent of his own money towards the purchase of the vehicle and despite the fact the vehicle was immediately titled to Hubbard Auto." Brief of Appellant at 13. AASE Sales maintains Hubbard had no claim related to the vehicle and brought the action "to simply extort money from" AASE Sales. Id. We find AASE Sales' counterclaim was made solely in response to Hubbard's filing of the instant action.
{¶ 38} Looking at the evidence in a light most favorable to AASE Sales, as we must, we find no genuine issues of material fact relating to its abuse of process claim. We find the record is devoid of any evidence establishing Hubbard used the bringing of the action for an ulterior motive. We further find there was no evidence of "a further act in the use of process not proper in the regular conduct of the proceeding." Clermont Environmental Reclamation, supra, at 11, 474 N.E.2d 357. Accordingly, Hubbard is entitled to judgment as a matter of law.
{¶ 39} AASE Sales' second assignment of error is overruled.
III
{¶ 40} In its third assignment of error, AASE Sales contends the trial court abused its discretion in finding Hubbard had proven his claim of breach of express warranty and granting rescission of the contract.
{¶ 41} R.C. 1302.26 provides:
(A) Express warranties by the seller are created as follows:
(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
* * *
(B) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
{¶ 42} "To establish a claim for breach of express warranty under Ohio law, a plaintiff must show that: (1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided the defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect." Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Ents., 4th Dist. Ross, 2015-Ohio-4884, 50 N.E.3d 955, ¶ 11.
{¶ 43} The advertisement for the 1963 Porsche read:
1963 B/1600 T6 Coupe
This Matching numbers 1963
Porsche body by Reutter 356S
2dr 356B/1600 T6 Coupe *1038 features:
* * *
This was a special order car from the factory at a
time when most 356's were coming in without any
options.
VIN # 12741, Transmission number 65017 Engine
Number 0700635.
* * *
All items listed are included with the car per
factory Kardex.
* * *
1963 PORSCHE 356B/1600 T6
COUPE FULLY RESTORED MATCHING
NUMBERS RARE CLASSIC BEST IN
SHOW QUALITY INSIDE & OUT!
{¶ 44} AASE Sales submits the phrases "matching numbers" and "# 1 restored condition" do not create express warranties. We disagree.
{¶ 45} We find Hubbard established a claim for breach of express warranty. AASE Sales as the seller made affirmations of fact, i.e., the 1963 Porsche was a matching numbers vehicle and was in # 1 restored condition, in its advertisement on its website and directly to Hubbard as the buyer. The terms "matching numbers" and "# 1 restored condition" have specific meanings within the classic car industry. Hubbard was interested in the vehicle specifically because it was a matching numbers car and in # 1 restored condition. As a result, the affirmations of fact became part of the basis of the bargain, thereby, creating an express warranty the 1963 Porsche would conform to the affirmations.
{¶ 46} Hubbard's testimony and the testimony of Lance Coran, his expert witness, although disputed, was sufficient to support the trial court's conclusion the 1963 Porsche was, in reality, not a matching numbers vehicle and/or in # 1 restored condition as warranted. In October, 2015, after having repairs performed on the vehicle and after receiving the Certificate of Authenticity from Porsche Cars North America, Hubbard learned the truth about the car and contacted Thomas. Although Hubbard purchased the 1963 Porsche in April, 2015, we find he provided AASE Sales with reasonable notice of the defect as he advised Thomas of the discrepancy immediately upon learning the information himself. Because the evidence supported the trial court's determination the 1963 Porsche was not a matching numbers vehicle and not in # 1 restored condition, its value was 30% less than the value of the vehicle as warranted.
{¶ 47} Based upon the foregoing, we find the trial court did not abuse its discretion in finding Hubbard established a claim of breach of express warranty and granting rescission.
IV
{¶ 48} In its fourth assignment of error, AASE Sales submits the trial court abused its discretion in granting judgment in favor of Hubbard on Counts 3 and 5 of the complaint pursuant to the Ohio Consumer Sales Practices Act ("the CPSA").
{¶ 49} The CPSA prohibits unfair or deceptive or unconscionable acts or practices in connection with consumer transactions. R.C. 1345.02 ; R.C. 1345.03. "[T]he CSPA defines 'unfair or deceptive consumer sales practices' as those that mislead consumers about the nature of the product they are receiving, while 'unconscionable acts or practices' relate to a supplier manipulating a consumer's understanding *1039 of the nature of the transaction at issue." Johnson v. Microsoft Corp., 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791.
{¶ 50} Pursuant to R.C. 1345.02(B), deceptive acts or practices include:
(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;
* * *
(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.
{¶ 51} R.C. 1345.02(B)(2), (10).
{¶ 52} The CSPA empowers "consumers" to pursue their own private right of action for violation of R.C. 1345.02 or 1345.03, or any rule adopted pursuant to R.C. 1345.05. R.C. 1345.09. A "consumer" is "a person who engages in a consumer transaction with a supplier." R.C. 1345.01(D). A "consumer transaction" is "a sale * * * of an item of goods * * * to an individual for purposes that are primarily personal, family, or household." R.C. 1345.01(A). Purchases of goods for primarily business purposes are not "consumer transactions." Lesco v. Toyota of Bedford, Inc., 8th Dist. No. 86144, 2005-Ohio-6724, 2005 WL 3475769, ¶ 15.
{¶ 53} AASE Sales argues the parties did not engage in a consumer transaction because the 1963 Porsche was purchased by a used car dealer for business purposes. AASE Sales concludes; therefore, the CPSA does not apply to the transaction between the parties.
{¶ 54} When deciding whether a consumer transaction exists, courts look to "the point in time when the parties have entered a binding agreement." Tomes v. George P. Ballas Leasing, Inc. (Sept. 30, 1986), 6th Dist. No. L-85-359, 1986 WL 11420. See also Gugliotta v. Morano, 161 Ohio App.3d 152, 2005-Ohio-2570, 829 N.E.2d 757, ¶ 35-36 (following and applying Tomes ); Couto v. Gibson, Inc. (Feb. 26, 1992), 4th Dist. No. 1475, 1992 WL 37800 (same); Jackson v. Krieger Ford, Inc. (Mar. 28, 1989), 10th Dist. No. 88AP-1030, 1989 WL 29351 (same). Courts then examine the "objective manifestations" the purchaser made during that time period regarding how he intended to use the purchased item. Tomes , supra.
{¶ 55} Applying the Tomes ' rule to the case at bar leads to the conclusion the sale in question was, in fact, a consumer transaction. When Hubbard initially contacted Thomas and throughout their negotiations, Hubbard expressed his intention to have the 1963 Porsche be part of his or his father's personal collection. The objective manifestations of Hubbard establish his purchase of the 1963 Porsche was for personal purposes.
{¶ 56} Having found, supra, AASE Sales made misrepresentations and breached its express warranty relative to the vehicle, we find AASE Sales engaged in a deceptive act, in violation of the CSPA. Accordingly, we find the trial court did not abuse its discretion in granting judgment in favor of Hubbard on Counts 3 and 5 of the complaint.
{¶ 57} AASE Sales' fourth assignment of error is overruled.
V
{¶ 58} In its fifth assignment of error, AASE Sales maintains the trial court erred in awarding $5,084.55, in damages to Hubbard after he elected rescission as his remedy. We disagree.
{¶ 59} A trial court has discretion in fashioning a decree which will return *1040 the parties to the position they occupied before they entered into the contract. See Wells Fargo v. Mowery, 187 Ohio App.3d 268, 2010-Ohio-1650, 931 N.E.2d 1121, at ¶ 23 ("standard of review for to claims for equitable relief is abuse of discretion"). " 'Rescission is an equitable remedy that invalidates an agreement'." State ex rel. BDFM Co. v. Ohio Dept. of Transp., 10th Dist. No. 11AP-1094, 2013-Ohio-107, 2013 WL 209132, ¶ 64, quoting Areawide Home Buyers, Inc. v. Manser, 7th Dist. No. 04 MA 154, 2005-Ohio-1340, 2005 WL 678512, ¶ 24.
{¶ 60} The primary purpose of rescission is to restore the status quo and return the parties to their respective positions had the contract not been formed. Rosepark Properties, Ltd. v. Buess, 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, ¶ 51, citing to Mid-America Acceptance Co. v. Lightle (1989), 63 Ohio App.3d 590, 579 N.E.2d 721. "[R]escission is not merely a termination of the contract; it is an annulment of the contract. * * * Returning the parties to the status quo is an integral part of rescission, and in doing so it is generally necessary to award the party seeking rescission at least his out-of-pocket expenses." Mid-America Acceptance Co., supra, at 599, 579 N.E.2d 721. See, also, Sabbatis v. Burkey, 166 Ohio App.3d 739, 2006-Ohio-2395, 853 N.E.2d 329 (under rescission claim, plaintiff entitled to incidental damages for loss not cured by cancellation of the contract).
{¶ 61} The record reveals Hubbard expended funds in connection to the transaction. He paid to have the 1963 Porsche transported from Ohio to Arizona. He also incurred out-of-pocket expenses to have work performed on the vehicle as well as ongoing expenses related to the maintenance and storage of the vehicle.
{¶ 62} We find Hubbard is entitled to be compensated for these "damages" because these expenses represent the loss not cured by the cancellation of the contract, but rather are expenses incurred as a result of AASE Sales' fraudulent misrepresentation. Reimbursement of Hubbard for these out-of-pocket expenses returned him to the status quo. Accordingly, we find the trial court did not err in awarding damages to Hubbard in the amount of $5,084.55, in addition to allowing him to rescind the contract.
{¶ 63} AASE Sales' fifth assignment of error is overruled.
{¶ 64} The judgment of the Delaware County Court of Common Pleas is affirmed.
Delaney, J., and Baldwin, J., concur

Brett Johnson is the author of The 356 Porsche, A Restorer's Guide to Authenticity .

AASE Sales refers to Hubbard's motion for directed verdict as a motion to dismiss. The record indicates Hubbard expressly moved for direct verdict.